[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 599.]

CINCINNATI BELL TELEPHONE COMPANY, APPELLEE, *v.* CITY OF CINCINNATI ET AL., APPELLANTS.

[Cite as *Cincinnati Bell Tel. Co. v. Cincinnati*, 1998-Ohio-339.]

*Municipal corporations—Taxation—Local net profits taxes are valid—Tax enacted by a municipality pursuant to its taxing power is valid in the absence of an express statutory prohibition of the exercise of such power by the General Assembly.*

The taxing authority of a municipality may be preempted or otherwise prohibited only by an express act of the General Assembly. Section 13, Article XVIII, and Section 6, Article XIII, Ohio Constitution. (*Cincinnati v. Am. Tel. & Tel. Co.* [1925], 112 Ohio St. 493, 147 N.E. 806, overruled; *Haefner v. Youngstown* [1946], 147 Ohio St. 58, 33 O.O. 247, 68 N.E.2d 64, paragraphs three and four of the syllabus, overrule*d*, to the extent inconsistent herewith; *E. Ohio Gas Co. v. Akron* [1966], 7 Ohio St.2d 73, 36 O.O. 2d 56, 218 N.E.2d 608, overruled.)

(No. 97-310—Submitted February 4, 1998—Decided May 13, 1998.)

APPEAL from the Court of Appeals for Hamilton County, Nos. C-950931, C-950932 and C-950933.

———————————

{¶ 1} The city of Cincinnati, city of Blue Ash, and the village of Fairfax have enacted laws providing for the taxation of the net profits of corporations that are derived from business activities conducted within each municipality. Pursuant to the local ordinances authorizing the imposition of these taxes, all corporations are subject to the tax. Net profits are calculated according to the same method by which the net income of a corporation is computed and reported to the Internal Revenue Service. Corporations must pay the tax regardless of whether a

corporation maintains an office or place of business within the municipality. In essence, corporations conducting business within each of these municipalities must pay a tax on the profits earned within and that are attributable to the business activity occurring in the municipality.

{¶ 2} Appellee, Cincinnati Bell Telephone Company, is a public utility that provides telephone service to customers residing in Cincinnati, Blue Ash, and Fairfax. For the tax years 1991, 1992, and 1993, Cincinnati Bell filed income tax returns with each of the municipalities as well as first quarter estimated payments for the tax year 1994. Cincinnati Bell paid a total of $935,942.28 to the city of Cincinnati, $17,402.59 to the city of Blue Ash, and $2,015.64 to the village of Fairfax in taxes for those years in question.

{¶ 3} Subsequent to making those payments, Cincinnati Bell requested refunds for those respective amounts from each municipality, asserting that a tax assessment levied by the state of Ohio on the company pursuant to R.C. 5727.30 preempted the authority of each municipality to assess its net profits tax. R.C. 5727.30 provides that "[e]ach public utility, except railroad companies, shall be subject to an annual excise tax, as provided by sections 5727.31 to 5727.62 of the Revised Code, for the privilege of owning property in this state or doing business in this state during the twelve-month period next succeeding the period upon which the tax is based." Public utility companies must pay a tax of 4.75 percent based upon the total of all nonexempt gross receipts pursuant to R.C. 5727.38.

{¶ 4} Cincinnati Bell filed its requests with the tax commissioners of the respective municipalities. The tax commissioners of all three municipalities denied Cincinnati Bell's request for a refund. Cincinnati Bell appealed these decisions to the Cincinnati Finance Review Board, the City of Blue Ash Tax Board of Review, and the Village of Fairfax Tax Board of Review, each of which affirmed the decisions of the respective tax commissioner. Pursuant to R.C. 2506.04, Cincinnati Bell appealed the decisions of the boards of review to the Hamilton County Court

of Common Pleas, and also filed a complaint for a refund pursuant to R.C. 718.06(C). The trial court consolidated the actions against the municipalities, affirmed the boards of review, and granted summary judgment in favor of the municipalities on the claims for refunds.

{¶ 5} Cincinnati Bell appealed to the Court of Appeals for Hamilton County. The court of appeals reversed, holding that the public utility excise tax, as defined in R.C. 5727.30 *et seq*., impliedly preempts municipalities from enacting a tax on the net profits of a public utility company that can be attributed to the business activity of that company that is conducted within the municipality. The court entered judgment in favor of Cincinnati Bell on its refund claims.

{¶ 6} The cause is now before the court pursuant to the allowance of a discretionary appeal.

_____

*Frost & Jacobs, L.L.P., Frederick J. McGavran* and *Larry H. McMillin,* for appellee.

*Fay D. Dupuis,* City Solicitor, and *Richard Ganulin,* Assistant City Solicitor, for appellants city of Cincinnati and Gary A. Papania, Tax Commissioner.

*Dinsmore & Shohl, L.L.P., Mark A. VanderLaan* and *Thomas Jacobs,* for appellants city of Blue Ash and Sharry K. Long, Tax Commissioner.

*Dinsmore & Shohl, L.L.P., Gary E. Becker* and *Alan H. Abes*, for appellants village of Fairfax and Jennifer M. Kaminer, Clerk-Treasurer.

*John E. Gotherman* and *Malcolm C. Douglas,* urging reversal for *amicus curiae*, The Ohio Municipal League.

_____

**MOYER, C.J.**

{¶ 7} The question presented is whether a municipality is preempted by R.C. 5727.30 *et seq.* from enacting a net profits tax. Our analysis of the law causes us to conclude that a tax enacted by a municipality pursuant to its taxing power is

valid in the absence of an express statutory prohibition of the exercise of such power by the General Assembly. Accordingly, we reverse the judgment of the court of appeals.

I

{¶ 8} Municipal taxing power in Ohio is derived from the Ohio Constitution. Section 3, Article XVIII of the Constitution, the Home Rule Amendment, confers sovereignty upon municipalities to "exercise all powers of local self-government." As this court stated in *State ex rel. Zielonka v. Carrel* (1919), 99 Ohio St. 220, 227, 124 N.E. 134, 136, "[t]here can be no doubt that the grant of authority to exercise all powers of local government includes the power of taxation."

{¶ 9} However, the Constitution also gives to the General Assembly the power to limit municipal taxing authority. Section 6, Article XIII provides that "[t]he General Assembly shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation * * * so as to prevent the abuse of such power." Section 13, Article XVIII provides that "[l]aws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes * * *." See *Franklin v. Harrison* (1960), 171 Ohio St. 329, 14 O.O.2d 4, 170 N.E.2d 739.

{¶ 10} Appellants assert that their local net profits taxes are valid because the General Assembly has not, pursuant to these constitutional powers, expressly preempted such a tax from local imposition. Appellants Blue Ash and Fairfax and *amicus* suggest that the doctrine of implied preemption, upon which appellees rely, be abrogated. Implied preemption of taxation, these appellants and *amicus* argue, is an anachronistic doctrine, which is rooted in public policy considerations and derives no support from the Constitution. For the reasons that follow, we agree.

II

{¶ 11} In *State ex rel. Zielonka v. Carrel*, this court concluded that the exercise of the taxing power is granted to municipalities pursuant to Section 3, Article XVIII of the Ohio Constitution. 99 Ohio St. at 227, 124 N.E. at 136. In arriving at that conclusion, this court raised, in *dicta*, the question of whether the General Assembly could impliedly preempt municipal taxing power:

"It is enough to say that the general assembly has not expressly limited the authority of municipalities to levy an occupational tax, nor has it impliedly limited such authority by invading the field on its own account.

"It is possible, of course, that the interesting question whether both state and municipality may occupy the same field of taxation at the same time, may some day be presented to the courts for their determination." *Id*. at 228, 124 N.E. at 136.

{¶ 12} This court then considered that question and established the doctrine of implied preemption in *Cincinnati v. Am. Tel. & Tel. Co.* (1925), 112 Ohio St. 493, 147 N.E. 806. There, the city of Cincinnati attempted to levy an excise tax, at an annual flat rate, on all railroads, telegraph companies, and telephone companies operating or doing business within the city limits. At the same time, the state levied excise taxes, on income measured by gross receipts, upon the same companies. Former G.C. 5483, 5484, and 5486. This court concluded that the municipal taxes were preempted by the state excise taxes, reasoning that "[t]he power granted to the municipality by Section 3, Article XVIII, of the Constitution * * * does not extend to fields within such municipality which have already been occupied by the state." *Id.* at paragraph two of the syllabus.

{¶ 13} Subsequent decisions to that establishment of implied preemption reflect the court's effort to determine the precise scope and applicability of the doctrine. In *Haefner v. Youngstown* (1946), 147 Ohio St. 58, 33 O.O. 247, 68 N.E.2d 64, a municipal excise tax was levied upon consumers of utility services based upon the rate charged. The state imposed both a sales tax on those consumers, and a privilege tax measured by gross receipts on utility companies.

The state sales tax exempted utility services. Without relying specifically on either state tax as the basis for its position, the court held that the enactment of both taxes by the state constituted a preemption of "that field of taxation which includes, *inter alia*, receipts by utility companies from natural gas, electricity, and water sold to consumers and local service and equipment furnished to telephone subscribers." *Id*. at paragraph four of the syllabus. The court also held that the power of a municipality to raise revenue could be limited by "implication flowing from state legislation which pre-empts the field" of taxation. *Id.* at paragraph three of the syllabus. In explaining its basis for preemption, the court stated that "[i]nferentially the whole legislative course shows an intent to avoid double taxation of receipts whether they come from sales proper or are the 'gross receipts' of utilities." *Id*. at 64, 33 O.O. at 249, 68 N.E.2d at 67.

{¶ 14} In *E. Ohio Gas Co. v. Akron* (1966), 7 Ohio St.2d 73, 36 O.O. 2d 56, 218 N.E.2d 608, the court was presented with the question of whether, under the doctrine of implied preemption, a municipal income tax imposed on public utilities was preempted by a gross receipts tax levied by the state on public utilities pursuant to R.C. Chapter 5727. The court determined that the state tax was essentially an adjusted gross income tax, and that since the state tax and the local tax were of a similar kind, the local tax was preempted by implication. *Id*. at 77, 36 O.O.2d at 59, 218 N.E.2d at 610. The court further stated that the case presented "a clear-cut example of double taxation such as the court had in mind when it originally created the doctrine of pre-emption by implication." *Id*. at 78, 36 O.O.2d at 59, 218 N.E.2d at 611.

{¶ 15} This court's statement in *East Ohio Gas* that the public utilities gross receipts tax was an income tax prompted the city of Cleveland to contend in *State ex rel. Cleveland v. Kosydar* (1973), 36 Ohio St.2d 183, 65 O.O.2d 401, 305 N.E.2d 803, that it was entitled to a share of the receipts of that tax under Section 9, Article XII of the Constitution. In clarifying its position that the gross receipts tax was an

excise tax rather than an income tax, the court stated that nothing in the syllabus or opinion of *East Ohio Gas* "should be construed to represent a departure from this court's position" that the public utilities gross receipts tax was an excise tax as opposed to an income tax. *Id.* at 185, 65 O.O.2d at 402, 305 N.E.2d at 804.

{¶ 16} That the court has struggled to apply the doctrine it created in *Cincinnati v. AT & T* is reflected by subsequent attempts to define what it meant in its holding that municipal taxing power "does not extend to *fields* within such municipality which have already been occupied by the state." (Emphasis added.) *Cincinnati v. AT & T*, paragraph two of the syllabus. In one case, we implied that "field" might be defined by the types of taxes involved, *i.e.*, excise as opposed to income taxes. *Angell v. Toledo* (1950), 153 Ohio St. 179, 41 O.O. 217, 91 N.E.2d 250. In *Angell*, we stated that "[i]n the interpretation of the Ohio Constitution an income tax is not to be treated as an excise tax." *Id.* at 183, 41 O.O. at 219, 91 N.E.2d at 252. We added that "Ohio municipalities have the power to levy and collect income taxes in the absence of pre-emption by the General Assembly of the field of *income taxation* * * *." (Emphasis added.) *Id.* at paragraph one of the syllabus. Justice Taft, concurring in *Angell*, wrote that "the occupation by the state of a small portion of a particular field of taxation does not necessarily indicate the intention of the General Assembly to exclude municipalities from the portion of such field not so occupied." *Id.* at 186, 41 O.O. at 221, 91 N.E.2d at 254.

{¶ 17} In contrast, this court has at other times taken a broader view of what constitutes the "field" of taxation. In *Haefner,* the court premised its application of implied preemption on an analysis of the *entire* taxing scheme imposed upon utilities by the General Assembly. Similarly, Chief Justice O'Neill, concurring in *Cleveland*, stated that "if the General Assembly has levied a tax on a particular *subject matter*, it will be presumed that the General Assembly has impliedly exercised its power to prohibit a local tax on the same subject matter." (Emphasis added.) *Cleveland* at 186, 65 O.O.2d at 403, 305 N.E.2d at 805.

III

{¶ 18} The difficulty encountered by this court in applying the doctrine of implied preemption is perhaps best illustrated by our statement in *East Ohio Gas* that "[a] reading of the cases cited above will demonstrate that the language of this court, in asserting or denying the doctrine of pre-emption by implication, has sometimes been obscure, ambiguous, inconsistent and on occasion, almost contradictory to previous cases in stating the grounds upon which the court's judgment was based." *East Ohio Gas* at 77, 36 O.O.2d at 58, 218 N.E.2d at 610.

{¶ 19} Today we end that confusion by analyzing municipal taxing power within the context of the source of that power—the Ohio Constitution.

{¶ 20} Prior to the passage of the Home Rule Amendment, the source and extent of municipal power was derived from the enactments of the General Assembly. See *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 140 N.E. 595. Passage of the Home Rule Amendment provided municipalities with "full and complete political power in all matters of local self government." *Id*. at 255, 140 N.E. at 598. The municipal taxing power is one of the "powers of local self-government" expressly delegated by the people of the state to the people of municipalities. *Zielonka*, 99 Ohio St. at 227, 124 N.E. at 136.

{¶ 21} Pursuant to Section 13, Article XVIII, and Section 6, Article XIII, the Constitution confers power upon the General Assembly to limit the exercise of taxing power by a municipality. These provisions should be interpreted coextensively with the general grant of local governing authority to municipalities under Article XVIII. By the grant of this authority, the intention of the Home Rule Amendment was to eliminate statutory control over municipalities by the General Assembly. See *Perrysburg* at 255, 140 N.E. at 598. Its passage granted " 'municipalities sovereignty in matters of local self-government, *limited only by other constitutional provisions*.' " (Emphasis added.) *Canton v. Whitman* (1975), 44 Ohio St.2d 62, 65, 73 O.O.2d 285, 289, 337 N.E.2d 766, 769. Given this general,

broad grant of power that municipalities enjoy under Article XVIII, the Constitution requires that the provisions allowing the General Assembly to limit municipal taxing power be interpreted in a manner consistent with the purpose of home rule.

{¶ 22} The clauses from which the General Assembly derives power to limit the exercise of municipal taxing power indicate that "[l]aws may be passed to limit the power of municipalities to levy taxes and incur debts * * *," Section 13, Article XVIII, and that "[t]he General Assembly shall provide for the organization of cities, and incorporated villages, by general laws, and *restrict their power of taxation * * * .*" (Emphasis added.) Section 6, Article XIII. These provisions clearly delegate power to the General Assembly to limit exercise of the municipal taxing power. When these provisions are interpreted in relation to the purpose and scope of the Home Rule Amendment, it is evident that a proper exercise of this limiting power requires an express act of restriction by the General Assembly. The mere enactment of state legislation that results in an occupation of a field of taxation is not sufficient to constitute an exercise of the General Assembly's constitutional power to limit municipal taxation. To construe the enactment of such legislation to impliedly preempt municipal taxing powers would contravene the principle underlying Article XVIII—that municipal powers are derived from the Constitution and not from the General Assembly. See *Perrysburg*, at paragraph one of the syllabus. The adoption of Section 3, Article XVIII meant that municipalities were entitled to exercise, fully and completely, "all powers of local self-government." Among those powers is the power of taxation. Accordingly, given the delegation, by the people of the state, of power to levy taxes for municipal purposes, the exercise of that power is to be considered in all respects valid, unless the General Assembly has acted affirmatively by exercising its constitutional prerogative. In the absence of an express statutory limitation demonstrating the exercise, by the General Assembly, of its constitutional power, acts of municipal taxation are valid.

**{¶ 23}** That the General Assembly is aware that it may exercise its limiting power by expressly preempting municipal taxation by statute is demonstrated by its passage of specific prohibitions on municipal taxation of certain types of income as provided in R.C. 718.01(F). Pursuant to R.C. 718.01(F), "[n]o municipal corporation shall tax" military pay, income of certain nonprofit organizations, certain forms of intangible income, compensation paid to precinct election officials, and compensation paid to certain employees of transit authorities. Similarly, in providing for the collection of a state income tax, the General Assembly has expressly provided that "[t]he levy of this tax on income does not prevent a municipal corporation, a joint economic development zone created under section 715.691, or a joint economic development district created under section 715.70 or 715.71 or sections 715.72 to 715.81 of the Revised Code from levying a tax on income." R.C. 5747.02(C).

**{¶ 24}** One analysis of the enactment of the state income tax provisions indicates that the General Assembly included this express disclaimer to clearly state that the state tax would not preempt, by implication, the power of municipalities to levy income taxes. Dewey, Municipal Income Taxes in Ohio: Limitations on the Tax Base by State Pre-emptions (1976), 7 U.Tol.L.Rev. 501, 503. This disclaimer runs counter to, and implies disagreement with, the inference established in *Cincinnati v. AT & T* that enactment of state tax legislation indicates the desire of the General Assembly to preempt municipal taxation in the same area or "field." See Municipal Income Taxes at 513.

**{¶ 25}** Very clearly, there is no provision in the Ohio Constitution that contains words preventing a municipality from exercising its taxing power simply because the General Assembly has enacted tax legislation of its own. Rather, the foregoing analysis indicates a balanced delegation of power, by the people, to municipalities and the General Assembly with respect to municipal taxing power. This balance is best maintained by interpreting the specific limiting power of the

General Assembly so that it does not engulf the general power of taxation delegated to municipalities.

IV

**{¶ 26}** The remaining cornerstone of the doctrine of implied preemption is this court's stated "antipathy to 'double taxation.' " *East Ohio Gas* at 77, 36 O.O.2d at 58, 218 N.E.2d at 610. In *East Ohio Gas*, this court stated that the primary basis undergirding the doctrine was a desire to prevent double taxation. *Id.*

**{¶ 27}** While there may be a desire to avoid double taxation as a matter of public policy, there is no constitutional prohibition against double taxation. This court stated in *Sandusky Gas & Elec. Co. v. State* (1926), 114 Ohio St. 479, 490, 151 N.E. 685, 688, that double taxation "does not render the statute invalid or the order of the tax commission violative of any provision of either the federal or the state Constitution." Plainly, multiple taxation of the same subject matter exists in the form of taxation imposed by municipal, state, and federal governments against net income.

**{¶ 28}** Additionally, we have not always adhered to our position regarding double taxation. This court had no "antipathy to double taxation" in *Thompson v. Cincinnati* (1965), 2 Ohio St.2d 292, 31 O.O.2d 563, 208 N.E.2d 747, where we held that both the city of Cincinnati and the city of Loveland could legally tax the same income of a person who lived in Loveland but was employed in Cincinnati. In paragraph four of the syllabus, we held that "[a] resident of one municipal corporation who receives wages as a result of work and labor performed within another municipal corporation may be lawfully taxed on such wages by both municipal corporations."

V

**{¶ 29}** There is no constitutional provision that directly prohibits both the state and municipalities from occupying the same area of taxation at the same time. Rather, the Constitution presumes that both the state and municipalities may

exercise full taxing powers, unless the General Assembly has acted expressly to preempt municipal taxation, pursuant to its constitutional authority to do so. Our interpretation of that authority today is consistent with the constitutional powers granted to municipalities under Article XVIII, and our law that Article XVIII powers may be limited only by other constitutional provisions.

{¶ 30} Having determined that there is no constitutional basis that supports the continued application of the doctrine of implied preemption, we are compelled, by virtue of the foregoing analysis, to overrule *Cincinnati v. Am. Tel. & Tel. Co.*, *East Ohio Gas v. Akron,* and paragraph four and the portion of paragraph three of the syllabus in *Haefner v. Youngstown* that is inconsistent with our holding today. The power to restrict municipal taxing power as granted by Section 13, Article XVIII and Section 6, Article XIII of the Ohio Constitution requires the General Assembly to preempt municipal taxing power by express statutory provision.

{¶ 31} Accordingly, we hold that the taxing authority of a municipality may be preempted or otherwise prohibited only by an express act of the General Assembly.

{¶ 32} The judgment of the court of appeals is reversed.

*Judgment reversed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

LUNDBERG STRATTON, J., dissents.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 33} I disagree with the majority's decision to overrule a long line of well-reasoned cases that have established the doctrine of implied preemption. Therefore, I would affirm the court of appeals, finding that the General Assembly intended to preempt this type of municipal tax on public utilities by its enactment of the public utility excise tax. I disagree with the majority's decision to outright abolish the doctrine of implied preemption. Therefore, I respectfully dissent.

January Term, 1998

_____