[Cite as *Panther II Transp., Inc. v. Seville Bd. of Income Tax Rev.*, 138 Ohio St.3d 495, 2014-Ohio-1011.]

PANTHER II TRANSPORTATION, INC., APPELLEE, *v.* VILLAGE OF SEVILLE

BOARD OF INCOME TAX REVIEW ET AL., APPELLANTS.

[Cite as *Panther II Transp., Inc. v. Seville Bd. of Income Tax Rev.,*

138 Ohio St.3d 495, 2014-Ohio-1011.]

*Taxation—Municipal home rule—Exemption of motor-transportation companies*

*from municipal income tax—Former R.C. 4921.18 and 4921.25.*

(Nos. 2012-1589 and 2012-1592—Submitted December 11, 2013—Decided

March 19, 2014.)

APPEALS from the Court of Appeals for Medina County,

Nos. 11CA0092-M and 11CA0093-M, 2012-Ohio-3525.

_____

**O'NEILL, J.**

**{¶ 1}** In these appeals, we address a corporate taxpayer's claim that state law exempts it from the imposition of a local income tax on its net profit. Both the Board of Tax Appeals ("BTA") and the Ninth District Court of Appeals agreed that state law preempted the local tax as applied to "motor transportation companies" that are subject to state taxes, fees, and regulatory requirements. The Central Collection Agency ("CCA") and its tax administrator and the Seville Board of Income Tax Review have appealed from the judgment of the court of appeals, contending that the state law at issue does not preclude the imposition of generally applicable local income taxes. We disagree and affirm the court of appeals' judgment.

**Procedural History**

**{¶ 2}** These consolidated cases are separately filed appeals from the same court of appeals decision, one filed by the Seville Board of Income Tax Review and the other filed by the CCA and its tax administrator, Nassim Lynch.

**{¶ 3}** By letter dated March 5, 2007, appellee, Panther II Transportation, Inc., requested refunds for tax years 2005 and 2006 of the amounts paid, totaling $161,761. The claim was predicated on preemption of the village's income tax under former R.C. 4921.25. By letter dated August 2, 2007, CCA denied the refund claim, and Panther appealed to the Seville Board of Income Tax Review. That board issued its decision denying the appeal on June 5, 2008, after which Panther appealed to the BTA.

**{¶ 4}** In its August 23, 2011 decision, the BTA reversed, holding that former R.C. 4921.25 did in fact preempt Seville's tax on net profits as applied to a motor-transportation company such as Panther. *Panther II Transp., Inc. v. Seville Bd. of Income Tax Review*, BTA No. 2008-M-1247, 2011 WL 3795676, *2-3 (Aug. 23, 2011). When CCA and the Seville Board of Income Tax Review appealed, the Ninth District Court of Appeals affirmed the decision of the BTA. 2012-Ohio-3525. Both CCA and the Seville Board of Income Tax Review appealed to this court. We originally denied jurisdiction, but then granted a motion for reconsideration and accepted jurisdiction.

**Factual Background**

*1. Seville's income tax is imposed on an allocated share of corporate net profit*

**{¶ 5}** In 2005 and 2006, Seville's income-tax ordinance imposed municipal income tax on the "adjusted federal taxable income" of corporations that have property, payroll, or receipts within the village limits. The starting point was federal taxable income, after which the ordinance required some adjustments to arrive at what was referred to as "adjusted federal taxable income."

**{¶ 6}** Next, a "business allocation percentage" was computed based on the location of the corporate taxpayer's property, payroll, and receipts. Three percentages were calculated, using the property, payroll, and receipts inside the village of Seville as numerators; and property, payroll, and receipts everywhere as the denominators. The average of these three percentages was the business-

allocation percentage, which was then multiplied by the taxable net profits to derive the net profits allocable to Seville. That portion of Panther's income was then subjected to Seville's tax.

### 2. *Panther is a regulated entity under state law*

{¶ 7} According to testimony and documentation presented at the BTA, Panther has been operating since 1992, holds a certificate of the Federal Highway Administration, is registered with the Ohio Public Utilities Commission ("PUCO") as a motor carrier for hire, and holds a certificate of public convenience and necessity from the PUCO. The certificate of public convenience and necessity was a requirement for Panther to operate as a "motor transportation company" in Ohio pursuant to former R.C. 4905.07 and 4921.10.[1] Although the federal and state authorities at one time regulated rates, that function was phased out, and currently the regulations impose important safety requirements. As Panther's witness, Allen Motter, explained, the PUCO "give[s] a carrier a life" as to its intrastate operations, because former R.C. 4921.10 prohibited operation as a motor-transportation company without a certificate issued by the PUCO.

{¶ 8} Panther also presented copies of receipts showing payment of the per-vehicle tax imposed by former R.C. 4921.18, which is referred to in the statute at issue, former R.C. 4921.25. Panther maintains that Motter's testimony

---

1. The 129th General Assembly enacted 2012 Am.Sub.H.B. No. 487, effective June 11, 2012. The act completely rewrote R.C. Chapter 4921; among other things, it eliminated the category "motor transportation company" and established the new designation "for-hire motor carrier." R.C. 4921.01 and 4921.02. The statute preserved but recodified two provisions that, in their former iteration, are of interest in this case: former R.C. 4921.18, which imposed fees on former motor-transportation companies, is now codified at various divisions of R.C. 4921.19, while former R.C. 4921.25—the tax-immunity provision directly at issue in this case—is now codified as modified at R.C. 4921.19(J). Because this case involves refund claims for tax years 2005 and 2006, we will refer to the former version of the statutes that were in effect at that time and to "motor transportation company" as the category of regulated entity.

and the receipts establish that Panther itself paid a substantial amount of fees imposed by former R.C. 4921.18.[2]

{¶ 9} CCA offered the testimony of Robert G. Meaker, a CPA who is an assistant tax administrator at CCA. Meaker established that Panther had an extensive history of filing and paying municipal income taxes on its net profits, both in Medina and in Seville. This course of performance supposedly establishes a general understanding that state law does not preempt the tax as to motor-transportation companies. However, statements by amici Con-Way Freight, Inc. and United Parcel Service indicate that, for the most part, trucking companies have successfully persuaded local governments that former R.C. 4921.25 does preempt the tax.

**Analysis**

{¶ 10} Three provisions of the Ohio Constitution underlie the statutory issue presented in this case.

{¶ 11} First, the Home Rule Amendment, Article XVIII, Section 3 of the Constitution, confers upon municipalities the "authority to exercise all powers of local self-government," and there can be " 'no doubt that the grant of authority to exercise all powers of local government includes the power of taxation.' " *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 602, 693 N.E.2d 212 (1998), quoting *State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919). Second, Article XIII, Section 6 provides that the General Assembly "shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation * * * so as to prevent the abuse of such power." Third, under Article XVIII, Section 13, "[l]aws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes * * *."

---

2. There is some dispute about the testimony in this regard. CCA's cross-examination of Motter focused on the fact that Panther owns trailers but not tractors. Tractors were taxed under former R.C. 4921.18, but trailers were not.

4

Thus, municipal governments have a plenary power to tax, but the General Assembly has authority to impose specific limits on that power. *Cincinnati Bell* at 602; *see also Gesler v. Worthington*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 17, 21. Moreover, we have held that the state's power to preempt must be exercised by express provision; we will not imply a preemption merely by virtue of the state's entering a particular area of taxation itself. *Cincinnati Bell* at 605.

{¶ 12} The question before us concerns the preemptive scope of former R.C. 4921.25, 1953 H.B. No. 1:

The fees and charges provided under section 4921.18 of the Revised Code shall be in addition to taxes, fees, and charges fixed and exacted by other sections of the Revised Code * * *, *but all fees, license fees, annual payments, license taxes, or taxes or other money exactions*, except the general property tax, assessed, charged, fixed, or exacted by local authorities such as municipal corporations, townships, counties, or other local boards, or the officers of such subdivisions *are illegal and, are superseded* by sections 4503.04, 4905.03, and 4921.02 to 4921.32, inclusive, of the Revised Code. On compliance by such motor transportation company with sections 4503.04, 4905.03, and 4921.02 to 4921.32, inclusive, of the Revised Code, all local ordinances, resolutions, by laws, and rules in force shall cease to be operative as to such company, except that such local subdivisions may make reasonable local police regulations within their respective boundaries not inconsistent with such sections.

(Emphasis added.)

{¶ 13} The focal point of the dispute in this case is the preemptive sweep of the italicized language: does the statute broadly exempt motor-transportation companies from generally applicable local taxes, or is the preemption limited to regulatory fees and taxes, as CCA and the village tax review board contend?

{¶ 14} We think that former R.C. 4921.25 by its plain and expansive terms shows the General Assembly's intent to impose the broadest possible preemption of local taxing power. Far from limiting the scope of that preemption to regulatory fees and taxes, the statute unmistakably expands the preemption to encompass generally applicable taxes, including the tax on corporate net profits at issue here. The list of precluded levies includes not only "all fees, license fees, annual payments, license taxes," but extends beyond that to "taxes or other money exactions." The General Assembly could not have expressed itself more clearly: all monetary "exactions" of any kind, be they regulatory or ordinary tax measures, are declared to be "illegal" and "superseded" by state-law regulatory provisions.[3]

{¶ 15} Any remaining doubt as to the breadth of the statute's scope is removed by the explicit saving of "general property tax": because the scope of preemption broadly extended to generally applicable taxes, it became necessary to expressly permit the property tax to be imposed. Nor is there any merit to CCA's claim that reading the statute literally leads to a chamber of horrors. For example, CCA argues that a literal reading of former R.C. 4921.25's broad language would

---

3. CCA attempts to accord "exaction" a limited meaning, but in actual usage the term connotes the broadest sense in which government demands money from the citizenry. For a persuasive example, we look no further than the United States Supreme Court case addressing the constitutionality of the Patient Protection and Affordable Care Act. Writing for a majority of justices, Chief Justice Roberts concluded that the monetary payment Congress enacted as a "penalty" could properly be understood as a "tax" within Congress's taxing power. The chief justice used the word "exaction" repeatedly as a broad and neutral term that avoided the pitfall of using either the narrower term "penalty" or the narrower term "tax." *Natl. Fedn. of Indep. Business v. Sebelius*, ___ U.S. ___, 132 S.Ct. 2566, 2594-2601, 183 L.Ed.2d 450 (2012). The four justices who dissented from that ruling also used the word "exaction" in the very same broad and neutral sense. *Id.* at 2651-2655.

lead to a preemption of local building and zoning ordinances. But the legislature already preserved those local ordinances: former R.C. 4921.25 expressly permitted "reasonable local police regulations" not in conflict with the state law.

{¶ 16} In light of the clear import of the statutory language, our duty is to apply the statute rather than interpret it, as CCA would have us do here. *Lancaster Colony Corp. v. Limbach*, 37 Ohio St.3d 198, 199, 524 N.E.2d 1389 (1988), citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973); *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 17} Against our straightforward reading of the words of the statute, CCA argues that at the time the statute became law as part of the Ohio Motor Transportation Act in 1923, G.C. 614-98, H.B. No. 474, 110 Ohio Laws 211-223, there were no local income taxes in Ohio. Indeed, the constitutionality of such taxes was established many years after the enactment of the preemption provision. *See Angell v. Toledo*, 153 Ohio St. 179, 91 N.E.2d 250 (1950), paragraph one of the syllabus.[4] But CCA's argument lacks merit because R.C. 4921.25 by its terms does not limit its preclusive effect to taxes on the books on the date of its enactment; to the contrary, the statute broadly preempts without regard to when the municipality might choose to pass a new tax ordinance.

{¶ 18} To bolster its position, CCA reiterates the central holding of *Cincinnati Bell* that "a proper exercise of [the power to limit the taxing authority of municipalities under Ohio Constitution Article XVIII, Section 13] requires an express act of restriction by the General Assembly." *Cincinnati Bell*, 81 Ohio

---

4. CCA quotes a passage of *Angell*, paragraph two of the syllabus, to the effect that "the General Assembly has not * * * passed any law limiting the power of municipal corporations to levy and collect income taxes." This pronouncement, according to CCA, shows that R.C. 4921.25, the predecessor of which, G.C. 614-98, was on the books when *Angell* was decided, cannot be read to preempt an income tax. That argument has no merit. In context, the syllabus merely asserts that no general limitation of the local power to impose income taxes had been enacted by the General Assembly as of the date on which *Angell* was decided. The *Angell* court was not asserting that no state laws precluded the imposition of a local income tax under particular circumstances.

St.3d at 605, 693 N.E.2d 212. Because former R.C. 4921.25 does not explicitly mention a prohibition of local income taxes, the imposition of those taxes has supposedly not been subjected to "an express act of restriction."

{¶ 19} That argument is mistaken because it confuses two different things: explicitness on the one hand and specificity on the other. *Cincinnati Bell* does require "an express act of restriction by the General Assembly" for local taxes to be preempted. *Id.* Consistent with that requirement, former R.C. 4921.25 very explicitly states that local taxes are "illegal" and "superseded."

{¶ 20} But *Cincinnati Bell* does not state that an express preemption must specifically identify the tax to be preempted. Nor does it necessarily follow that the legislature must specifically have that tax in mind (here, an income tax that did not exist when the predecessor of former R.C. 4921.25 was enacted) as the type of tax that will be preempted. Indeed, in the context of *Cincinnati Bell*'s reasoning, the requirement of "an express act of restriction" means only that the state does not preempt local taxes merely by enacting a similar tax of its own.

{¶ 21} Equally unavailing is CCA's reliance on R.C. Chapter 718. CCA points to R.C. 718.01(D)(1)'s requirement that "no municipal corporation shall exempt from a tax on income * * * the net profit from a business or profession." Contrary to CCA's suggestion, this provision on its face does not somehow mandate taxation of Panther. The argument is flawed for two reasons. First, R.C. 718.01(D)(1) by its terms restricts the *acts of the local government*, not other laws enacted by the General Assembly itself. Second, as the Ninth District pointed out, R.C. 718.01(J) specifically prevents R.C. Chapter 718 from superseding other state-law restrictions on the local taxing power: "Nothing in this section or section 718.02 of the Revised Code shall authorize the levy of any tax on income that a municipal corporation is not authorized to levy under existing laws * * *." CCA completely ignores this provision.

**{¶ 22}** Additionally, CCA contends that Panther is not exempt if its contractors pay the fees imposed by R.C. 4921.18. Panther owns primarily trailers, which are not subject to the fees, but usually does not own the tractors, which are. Panther contracts with the owner-operators of the tractors, and CCA asserts that "[u]nder Panther's owner-operator lease agreement, it is clear that the parties have 'contractually' agreed that the owner-operators will pay the R.C. 4921.18 tax." But the plain language of former R.C. 4921.25 preempts locally imposed taxes based on the regulatory status of the potential taxpayer. Namely, the statute declares local taxes to be "illegal" because they are "superseded by sections 4503.04, 4905.03, and 4921.02 to 4921.32, inclusive, of the Revised Code," i.e., the provisions regulating a former "motor transportation company" (currently, a "for-hire motor carrier") such as Panther. Nothing in the statute conditions the exemption on the allocation of financial burdens under the parties' contracts.

**{¶ 23}** Finally, CCA contends that the principle of strict construction that we apply to tax exemptions requires us to restrict the scope of former R.C. 4921.25. To be sure, "[t]ax exemption statutes must be strictly construed," a principle necessary "in order to preserve equality in the burden of taxation." *Lutheran Book Shop v. Bowers*, 164 Ohio St. 359, 362, 131 N.E.2d 219 (1955). But that principle does not help CCA. As a potential taxpayer, Panther had the onus of showing that "the language of the statute 'clearly express[es] the exemption' in relation to the facts of the claim." *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16, quoting *Ares, Inc. v. Limbach*, 51 Ohio St.3d 102, 104, 554 N.E.2d 1310 (1990). It did so by showing that it was regulated as a motor-transportation company and that former R.C. 4921.25 preempted local taxes as applied to such entities. Under strict construction, nothing more was required.

**Conclusion**

**{¶ 24}** For the foregoing reasons, we conclude that the BTA and the Ninth District Court of Appeals correctly determined that Seville's tax on corporate net profits was preempted by former R.C. 4921.25. We therefore affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, J., dissents.

––––––––––––––––––––

**PFEIFER, J., dissenting.**

**{¶ 25}** In *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 693 N.E.2d 212 (1998), syllabus, this court held, "The taxing authority of a municipality may be preempted or otherwise prohibited only by an express act of the General Assembly. Section 13, Article XVIII, and Section 6, Article XIII, Ohio Constitution." When the predecessors of former R.C. 4921.18 and 4921.25 were enacted as part of the Ohio Motor Transportation Act in 1923, there were no municipal income taxes in Ohio. Thus, the imposition of a municipal income tax on motor carriers was not expressly prohibited or preempted by the General Assembly by those statutes.

**{¶ 26}** The Ohio Motor Transportation Act prevented motor carriers from having to traverse through a treacherous, winding road of local fees and licensure, streamlining the process statewide into an easily navigable system. The General Assembly made clear that it intended to preempt only the area of transportation-related taxes and fees when it excepted "the general property tax" from the scope of the statute in R.C. 4921.25. Again, there were no municipal income taxes to except from the statute.

**{¶ 27}** Furthermore, the income of a motor-transportation company is clearly not exempt from municipal income taxation under R.C. 718.01 or 715.013. The majority decision holding that the income of a motor-transportation company is now exempt from municipal income tax because of a law enacted in 1923 that taxes motor-transportation companies by the vehicle, G.C. 614-94, now R.C. 4921.18, and has nothing to do with the *income* of a motor-transportation company is counterintuitive and runs counter to this court's holding in *Angell v. Toledo*, 153 Ohio St. 179, 91 N.E.2d 250 (1950), paragraph two of the syllabus, which recognized the power of Ohio municipalities to levy and collect income taxes and noted that "the General Assembly has not * * * passed any law limiting [that] power.*"

**{¶ 28}** Finally, we must strictly construe tax-exemption statutes "in order to preserve equality in the burden of taxation." *Lutheran Book Shop v. Bowers*, 164 Ohio St. 359, 362, 131 N.E.2d 219 (1955). It seems that the majority strains the relevant statutes beyond recognition to find an exemption from municipal income tax for an industry that never asked for it.

———————————

Calfee, Halter & Griswold, L.L.P., and James F. Lang, for appellee.

Roderick Linton Belfance, L.L.P., and Theodore J. Lesiak, for appellant Village of Seville Board of Income Tax Review.

Barbara A. Langhenry, Cleveland Director of Law, and Linda L. Bickerstaff, Assistant Director of Law, for appellants Nassim M. Lynch and Central Collection Agency.

Zaino, Hall & Farrin, L.L.C., and Richard C. Farrin, urging affirmance for amicus curiae United Parcel Service, Inc.

Schumaker, Loop & Kendrick, L.L.P., and Michael M. Briley, urging affirmance for amicus curiae the Dump Truck Carriers Conference.

AldenLaw, John L. Alden, and Anthony E. Palmer Jr., urging affirmance for amicus curiae the Ohio Trucking Association.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., and Marc S. Blubaugh, urging affirmance for amicus curiae Con-way Freight, Inc.

Ice Miller, L.L.P., Philip Hartmann, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, Ohio Municipal League, urging reversal for amicus curiae Ohio Municipal League.

_____