[Cite as *Time Warner Cable, Inc. v. Cincinnati*, 2020-Ohio-4207.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIME WARNER CABLE, INC., & SUBSIDIARIES, | : | APPEAL NO. C-190375 TRIAL NO. 2017-1448 |
| | : | |
| Plaintiff-Appellee, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| CITY OF CINCINNATI, | : | |
| and | : | |
| TED NUSSMAN, TAX COMMISSIONER CITY OF CINCINNATI INCOME TAX DIVISION | : | |
| | : | |
| | : | |
| Defendants-Appellants. | : | |

Appeal From: Ohio Board of Tax Appeals

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 26, 2020

*Eversheds Sutherland (US) LLP*, *Michael R. Nelson* and *Michael J. Hilkin*, for Plaintiff-Appellee Time Warner Cable, Inc., & Subsidiaries,

*Paula Boggs Muething,* City Solicitor, and *Shuva J. Paul*, Assistant City Solicitor, for Defendants-Appellants City of Cincinnati and Ted Nussman.

**BERGERON, Judge.**

{¶1}   Although nothing may be as certain as death and taxes, perhaps cable bills fall in close behind.  This case involves two of those three eventualities, with a cable provider trying to escape certain taxation imposed by the city of Cincinnati.  More broadly, however, this case involves a clash between a municipality's right to tax pursuant to the constitutionally-engrained Home Rule Amendment and the General Assembly's ability to curtail that right.  After careful review, we conclude that aspects of the city's municipal code must yield to the state statute, and we accordingly affirm the judgment below.

I.

{¶2}   In late 2014, Time Warner Cable, Inc., and various subsidiaries (collectively, "Time Warner") filed its city of Cincinnati income tax return for the 2013 tax year.  After its initial filing in 2014, Time Warner subsequently amended its return in 2015.   Upon review of that filing, however, the city's Department of Finance Income Tax Division balked, notifying Time Warner that due to an adjustment, it owed a large sum in outstanding taxes and penalties.  Time Warner protested, appealing this assessment to the local board of review as provided by former Cincinnati Municipal Code 311-97.   Although Time Warner initially challenged three aspects of the city's assessment, the parties managed to resolve two of these issues, leaving the local board of review to sort out the interplay between the Cincinnati Municipal Code 311-11's and Regulation R11's (promulgated to aid the enforcement of Cincinnati Municipal Code Chapter 311) consolidated income tax return requirements, on the one hand, and the mandates of R.C. 718.06, on the other.  The local board ultimately upheld the assessment, which required that Time Warner's consolidated return exclude certain subsidiaries that did not do business in

2

Cincinnati from the 2013 filing, resulting in hundreds of thousands of dollars in outstanding tax liability.

{¶3} The dispute, at its core, involves the federal tax concept of an "affiliated group" entitled to file "consolidated" tax returns. At the risk of oversimplifying these matters, the IRS permits "an affiliated group of corporations to file a consolidated federal return. See 26 U.S.C. § 1501. This serves as a convenience for the government and taxpayers alike." *Rodriguez v. FDIC*, __U.S.__, 140 S.Ct. 713, 716, 206 L.Ed.2d 62 (2020). The consolidated filing essentially simplifies the tax reporting process, particularly for corporations with subsidiaries scattered across geographic boundaries (like Time Warner) and it enables an "affiliated group" to offset losses by certain corporate family members against others. In this case, Time Warner sought to file a consolidated return with the city that mirrored the affiliated group that it used for its federal tax filing, but the city objected. Pointing to its ordinance, it told the cable conglomerate that its "affiliated group" could only encompass affiliated corporate entities actually doing business in Cincinnati.

{¶4} Unsatisfied with the local board's disposition of this question, Time Warner next turned to the Ohio Board of Tax Appeals ("BTA") for relief as provided by R.C. 5707.011, maintaining that the municipal code and accompanying regulation conflicted with former R.C. 718.06. Time Warner asserted that the General Assembly enjoyed the right to limit the municipal tax authority, and that it effectuated exactly that by virtue of the plain language of the statute that enabled Time Warner to file a consolidated filing replicating the members in its federal consolidated return. Before the BTA, the city of Cincinnati and Ted Nussman, Tax Commissioner for the City of Cincinnati Income Tax Division (collectively, the "City") countered that no such conflict existed because former R.C. 718.06 did not expressly

3

preempt the municipal ordinance, and therefore, the ordinance constituted a valid exercise of local taxation (with a nod to the Home Rule Amendment). The BTA, however, ultimately agreed with Time Warner, finding that the statute's plain language expressly required that a municipality accept a consolidated return from an affiliated group of corporations where the affiliated group as a whole (and not each individual corporation) was subject to the municipality's income tax.

{¶5} The City then commenced this appeal, framing a single assignment of error. Insisting that the BTA erred by reversing the decision of the local board of review, the City maintains that no express conflict existed between former Cincinnati Municipal Code 311-11 and Regulation R11 with former R.C. 718.06 and that Time Warner must file in accordance with those local requirements.

## II.

{¶6} In reviewing a decision of the BTA, we generally do not sit as a de novo trier of fact, but where, as here, our task entails statutory construction, this constitutes a legal issue that we decide de novo on appeal. *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.*, 150 Ohio St.3d 386, 2016-Ohio-7582, 82 N.E.3d 1105, ¶ 8; *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 10. Therefore, under the circumstances presented here, we need not defer to the BTA's determination, but rather undertake our review de novo.

## A.

{¶7} We begin our statutory interpretation journey with a prefatory stop at Article XVIII, Section 3 of the Ohio Constitution, known as the "Home Rule Amendment," which allows municipalities to exercise "all powers of local self-government." Central to this self-governing authority lies the power to tax. *Gesler* at

OHIO FIRST DISTRICT COURT OF APPEALS

¶ 18; *Cincinnati Bell Tel. Co. v. Cincinnati,* 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998), quoting *Zielonka v. Carrel*, 99 Ohio St. 220, 227, 124 N.E. 134 (1919) ("The municipal taxing power is one of the 'powers of local self-government' expressly delegated by the people of the state to the people of municipalities."). But this power is not absolute (as the City readily acknowledges), as the Ohio Constitution also allows the General Assembly to pass laws "to limit the power of municipalities to levy taxes," Article XVIII, Section 13, Ohio Constitution, and to "restrict [municipal] power of taxation[.]" Article XIII, Section 6, Ohio Constitution. These provisions help frame the debate, as our "analysis turns on whether the General Assembly exercise[d] its power to limit or restrict the municipal taxing authority" through former R.C. 718.06. *Gesler* at ¶ 19.

{¶8} But the Supreme Court teaches us that, in exercising its power to restrict or limit municipal taxation, the General Assembly must do so expressly. *Cincinnati Bell* at 599 ("The taxing authority of a municipality may be preempted or otherwise prohibited only by an express act of the General Assembly."). Such a requirement flows from the constitutional division of labor: "the Constitution presumes that both the state and municipalities may exercise full taxing powers, unless the General Assembly has acted expressly to preempt municipal taxation, pursuant to its constitutional authority to do so." *Id.* at 607. Therefore, the power to preempt is not implicated "merely by virtue of the state's entering a particular area of taxation[.]" *Panther II Transp., Inc. v. Seville Bd. of Income Tax Rev.*, 138 Ohio St.3d 495, 2014-Ohio-1011, 8 N.E.3d 904, ¶ 11, citing *Cincinnati Bell* at 605. In other words, no concept of implied preemption exists for purposes of regulating the municipal taxing authority by the General Assembly. *Id.* at ¶ 20 ("[I]n the context of *Cincinnati Bell's* reasoning, the requirement of 'an express act of restriction' means

only that the state does not preempt local taxes merely by enacting a similar tax of its own.").

{¶9}    With the analytical table set, we now turn to the dueling statutory and municipal code provisions.   Former R.C. 718.06 (in effect during time periods germane to this appeal) provided:

> [A]ny municipal corporation that imposes a tax on the income or net profits of corporations shall accept for filing a consolidated income tax return from any affiliated group of corporations subject to the municipal corporation's tax if that affiliated group filed for the same tax reporting period a consolidated return for federal income tax purposes pursuant to section 1501 of the Internal Revenue Code.

On the other side of the ledger, former Cincinnati Municipal Code 311-11(a) allowed an affiliated group of corporations to file a consolidated return if that affiliated group filed "for the same taxable year a consolidated return for federal income tax purposes pursuant to Section 1501 of the Internal Revenue Code."   The ordinance further explained, however, "[o]nly corporations subject to the tax imposed by this chapter may be included in such consolidated return filed for Municipal income tax purposes."   Former Cincinnati Municipal Code 311-11(a).   Underscoring the point, Regulation R11 provided that "[a] consolidated return must include all companies that are so affiliated and that conduct business in the Municipality."   Former Regulation R11(A).   The municipal code thus sharply limited the array of entities that could constitute part of a corporation's "affiliated group."

{¶10}   In the City's eyes, this limitation ushers in no conflict with former R.C. 718.06 because the General Assembly failed to spell out all of the details for an "affiliated group" in the statute (an omission that the legislature corrected in a

6

subsequent enactment, 2014 Sub.H.B. 5). Bolstering this point, the City focuses on two aspects of the statute (1) the use of the indefinite article "a" before the phrase "consolidated income tax return," and (2) the phrase "subject to the municipal corporation's tax" as a restrictive modifier.

{¶11} In addressing the City's assertions, we are reminded that "[t]he first rule of statutory construction requires courts to look at the statute's language to determine its meaning. * * * Courts may not delete words used or insert words not used." *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 25. Therefore, while we acknowledge the statute's use of "a consolidated income tax return," we must also read that in conjunction with the phrase "from any affiliated group of corporations subject to the municipal corporation's tax," and the statute's anchoring these points with "pursuant to section 1501 of the Internal Revenue Code." *See Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, 17 N.E.3d 554, ¶ 9 (noting that in construing statutes, courts do not pick out one sentence and disassociate it from context but construe the statute as a whole). Construing these aspects together, the statute ultimately identifies what type of consolidated return the City shall accept for filing, i.e., a filing from "any affiliated group of corporations" so long as that "affiliated group filed for the same tax reporting period a consolidated return for federal income tax purposes[.]" While the City imagines a multitude of "affiliated groups" within a corporation structure, the statute links the affiliated group to the one that made a federal income tax filing, refuting the City's interpretation. In our case, there is no dispute that the "affiliated group" presented by Time Warner comported with the affiliated group that filed a consolidated federal return. The statute blesses this exact maneuver and requires that municipalities "shall accept" such a return, whereas the

municipal code (in these circumstances) proscribes it. That showcases the direct conflict between the two.

{¶12} Endeavoring to portray harmony rather than conflict, the City features the phrase "subject to the municipal corporation's tax" as ratifying that the consolidated return may include only those entities doing business in the City by modifying the word "corporation" in this manner. But we are unconvinced by the City's grammatical parsing—after all, its conceptualization of "affiliated group" would render the General Assembly's later reference to the affiliated group having filed as such for federal purposes during the same taxable year meaningless. *See State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 19 (courts should avoid a construction of a statute that would render a provision meaningless or superfluous). The later reference to affiliated group by the statute as "that affiliated group" indicates that the affiliated group filing a consolidated return for municipal purposes is synonymous with the group filing for federal income tax purposes, not merely some subset of corporations subject to the municipal tax. That also strikes us as the most logical reading of the statute.

{¶13} We find our conclusion supported further by the General Assembly's particular utilization of "affiliated group" and reference to the Internal Revenue Code. While the General Assembly neglected to define "affiliated group" in former R.C. 718.06, it represents a term of art for federal tax purposes. *See* 26 U.S.C. 1504 (defining "affiliated group" as certain includible corporations connected through stock ownership with a parent company). In construing a statute, we must generally assign words their common usage, but "[w]ords and phrases that have acquired a technical or particular meaning * * * shall be construed accordingly." R.C. 1.42;

*Youngstown Sheet & Tube Co. v. Lindley*, 56 Ohio St.2d 303, 309, 383 N.E.2d 903 (1978) (applying the long-standing federal treatment of term to undefined statutory term); *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 26 (noting that, in construing statutes, where a word has a technical definition the statute shall be construed accordingly). Thus, the conspicuous appropriation of "affiliated group" while referencing federal tax principles further elucidates the statute's purpose, reinforcing our conclusion in the preceding paragraph. Conversely, the City's vision of "affiliated group" requires a definition cut from whole cloth.

{¶14} Based on the statute's plain language, we find that the General Assembly took clear and affirmative measures to limit the City's authority to impose the income tax in the manner it sought. *Cincinnati Bell*, 81 Ohio St.3d at 606, 693 N.E.2d 212 (municipal power to levy tax is to be considered valid "unless the General Assembly has acted affirmatively by exercising its constitutional prerogative."); *S.B. Carts, Inc. v. Put-in-Bay*, 161 Ohio App.3d 691, 2005-Ohio-3065, 831 N.E.2d 1052, ¶ 11 (6th Dist.) (ordinance was valid exercise of taxing power where General Assembly had not acted affirmatively to limit that power). This represents an appropriate exercise of the General Assembly's constitutional power, which extends to not only limit the imposition of taxes but "endows the General Assembly with the capability to circumscribe the imposition, raising, and collection of a municipal tax." *City of Athens v. Testa*, 2019-Ohio-277, 119 N.E.3d 469, ¶ 44 (10th Dist.) (interpreting the word "levy" in Article XVIII, Section 13, Ohio Constitution to permit the General Assembly to limit municipal power to impose, collect, and administer taxes); *Cincinnati Imaging Venture v. City of Cincinnati*, 116 Ohio App.3d 1, 4, 686 N.E.2d 528 (1st Dist.1996) (General Assembly allowed to regulate the levy and collection of

municipal tax as well as limiting the imposition of those taxes). To that point, the City does not protest that the General Assembly exceeded its constitutional bounds here.

{¶15} In short, the City urges us to adopt a construction of former R.C. 718.06 that would render aspects of the statute a hollow letter. But we "must presume that the language chosen by the General Assembly was intended to be effective." *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 153 Ohio St.3d 63, 2017-Ohio-8988, 101 N.E.3d 396, ¶ 22; *Griffith v. Aultman Hosp.,* 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18 (in interpreting a statute, the court's paramount concern is legislative intent, which should be sought first from the language of the statute and the words used). Thus, the statute expressly preempts aspects of former Cincinnati Municipal Code 311-11, because it specifically required municipalities to accept a consolidated income tax return from the same affiliated group which filed for federal income tax purposes.

B.

{¶16} Alternatively, the City posits that former R.C. 718.06 impermissibly compels the City to exercise a power of taxation. Contrary to the City's contention, however, it already exercised its power of taxation by imposing an income tax under Cincinnati Municipal Code Chapter 311. Former R.C. 718.06 constituted a valid limitation on that power, rather than any sort of impermissible compulsion. *See New York Frozen Foods, Inc.*, 150 Ohio St.3d 386, 2016-Ohio-7582, 82 N.E.3d 1105, at ¶ 30 ("Former R.C. 718.06 did limit local taxing authority[.]").

{¶17} Similarly (relying on 90-year-old caselaw) the City contends that the statute unlawfully forces it to exercise extraterritorial power by taxing beyond its borders. Even if former R.C. 718.06 required a municipality to tax extraterritorially

(which strikes us as a dubious proposition), a municipality may act extraterritorially where granted such authority by statute. *Springfield v. All Am. Food Specialists, Inc.,* 85 Ohio App.3d 464, 469, 620 N.E.2d 120 (2d Dist.1993) (territorial limitations of the Home Rule Amendment may be overcome where expressly granted by statute). *Prudential Co-op. Realty Co. v. City of Youngstown,* 118 Ohio St. 204, 211-212, 160 N.E. 695 (1928) (ordinance constitutional where statute conferred on municipality extraterritorial authority); *Tatco Dev., Ltd. v. Montgomery Cty., Ohio,* 2d Dist. Montgomery No. 18387, 2001 WL 28674, *6 (Jan. 12, 2001) (municipality may only exercise extraterritorial authority if granted such by the legislature). As we already concluded above, the statute requires the City to accept a consolidated filing from an affiliated group that filed as such for federal purposes, negating any concerns that the City might transgress the limits of its authority.

{¶18} Finally, the City asserts that even if Time Warner "submitted the consolidated return it preferred * * * it would still have to abide by the City's accounting and apportionment methods" under Regulation R11. But to the extent that Regulation R11 limited the filing of a consolidated return by an affiliated group, it too stands in conflict with R.C. 718.06 and suffers the same preemptive fate. Regardless, we need not ponder the nuances of Time Warner's tax liability with the City—we need only decide the statutory interpretation question presented to us.

{¶19} In light of the preceding analysis, we affirm the decision of the BTA and overrule the City's sole assignment of error.

Judgment affirmed.


**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:
      The court has recorded its own entry this date.

11