[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.,* Slip Opinion No. 2016-Ohio-7582.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7582

NEW YORK FROZEN FOODS, INC., ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* BEDFORD HEIGHTS INCOME TAX BOARD OF REVIEW ET AL., APPELLEES AND CROSS-APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.,* Slip Opinion No. 2016-Ohio-7582.]

*Taxation—Municipal income tax—Refunds—City ordinance barred an entity from changing its separate return to a consolidated return when filing an amended return—Ordinance prohibited any change in the method of accounting when filing an amended return—Decision of the Board of Tax Appeals affirmed.*

(No. 2015-0575—Submitted August 17, 2016—Decided November 3, 2016.)

APPEAL from the Board of Tax Appeals, No. 2012-55.

_____

**LANZINGER, J.**

{¶ 1} This appeal involves the attempt to obtain a tax refund by a municipal income taxpayer, New York Frozen Foods, Inc. ("Frozen Foods"), which originally filed its Bedford Heights income-tax returns on a separate-entity basis for tax years 2005, 2006, and 2007. In March 2010, Frozen Foods, together with its affiliates, filed consolidated amended returns for those years and claimed a refund of taxes it had previously paid based on its separate returns. The refund amount claimed was $698,294. Regional Income Tax Agency ("RITA") denied the refund in its capacity as the city's tax administrator. This result was sustained by the Bedford Heights Income Tax Board of Review and affirmed by the Board of Tax Appeals ("BTA").

{¶ 2} Now on appeal, Frozen Foods presents several reasons why the BTA erred in affirming the denial of its refund claim. Bedford Heights cross-appealed and maintains that the BTA erred by failing to deny the refund on an alternative ground.

{¶ 3} We hold that the BTA erred by failing to find that the change from filing a separate return to filing a consolidated return was a "change in method of accounting" prohibited by the city ordinance in pursuing a refund claim. We therefore affirm the BTA's denial of the refund claim on the alternate ground that the change constituted a change in the method of accounting prohibited by the city ordinance.

## Factual Background

{¶ 4} Before us is a record certified by the Bedford Heights Income Tax Board of Review plus a set of stipulations advanced at the BTA covering the following basic facts:

- Frozen Foods timely filed separate-entity municipal-income-tax returns for tax years 2005, 2006, and 2007.
- Frozen Foods filed amended returns on a consolidated basis on March 9, 2010.

- Frozen Foods filed federal income-tax returns with its affiliates on a consolidated basis for tax years 2005, 2006, and 2007.

{¶ 5} RITA, Bedford Heights' tax administrator, denied the amended returns and refund claims, and Frozen Foods appealed to the review board, which issued a decision on November 9, 2011. The decision cites Bedford Heights Codified Ordinances 173.15(a) and 173.32, as well as section 5:06(A) of RITA's rules and regulations,[1] and states that these provisions, taken together, are "identical in effect." None of them, according to the board of review, "permits a taxpayer to change the method of accounting or the apportionment of net profits nor the method of filing after the due date for filing the original return." (Emphasis deleted.) The board affirmed the denial of refunds, and the taxpayer appealed to the BTA.

{¶ 6} At the BTA, the parties filed stipulations and briefs. The BTA issued its decision on March 9, 2015, in response to which Frozen Foods filed a motion for reconsideration. The BTA issued a second decision on March 20, denying the motion for reconsideration, vacating the March 9 decision, and substituting the March 20 decision. In doing so, the March 20 decision corrected a typographical error in the original opinion.[2]

{¶ 7} On the merits, the BTA agreed with Frozen Foods' assertion that filing an amended consolidated return did not involve a prohibited change in the method of accounting or apportionment. BTA No. 2012-55, 2015 Ohio Tax LEXIS 1659, 5 (Mar. 20, 2015). The BTA agreed that the amended returns were improper and affirmed the board's denial of the refund claims. Next, the BTA looked at a rule promulgated by RITA that addressed the filing of refund claims. The language

---

[1] Effective January 1, 1996, Bedford Heights adopted RITA's rules and regulation for the purpose of establishing rules for the collection of its city taxes.

[2] Frozen Foods filed its appeal within the 30-day appeal period that started with the March 20 decision. The appeal would have been untimely from the standpoint of the March 9 decision. However, the BTA vacated the first decision, and the March 20 decision replaced the March 9 decision, restarting the appeal period. We denied the city's motion to dismiss Frozen Foods' appeal as untimely. 144 Ohio St.3d 1481, 2016-Ohio-465, 45 N.E.3d 247.

of the rule strongly paralleled that of the city ordinance, but in 2009 RITA amended the rule to explicitly prohibit a change to consolidated filing on an amended return. The BTA held that the 2009 amendment to the RITA rule did apply, observing that it had no authority to address Frozen Foods' constitutional objections to applying the amended rule. Accordingly, the BTA affirmed the review board's denial of the refund claim.

## Standard of Review

{¶ 8} In reviewing a decision of the BTA, we do not sit as "a super BTA or a trier of fact de novo." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, citing *Youngstown Sheet & Tube Co. v. Mahoning Cty. Bd. of Revision*, 66 Ohio St.2d 398, 400, 422 N.E.2d 846 (1981). On the other hand, we have held that issues of statutory construction constitute legal issues that we decide de novo on appeal. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. Because this appeal calls for us to determine the proper construction of statutes and ordinances, we review the BTA's decision without according it deference.

## Analysis

*An entity's amended return changing from separate filing to consolidated filing constitutes a change in a method of accounting prohibited by the city ordinance*

{¶ 9} Usually the issues presented by an appeal would be considered before those presented by a cross-appeal. We reverse that order here because there is no need to consider issues raised by Frozen Foods' appeal if the Bedford Heights ordinances precluded a claim for a refund based only upon filing a consolidated, rather than a separate, return.

{¶ 10} The BTA found that Frozen Foods' change from a separate return to a consolidated return did not constitute a change in the method of accounting, which

is barred by the amended-returns provision of Bedford Heights Codified Ordinance 173.15(a). The ordinance allowing consolidated returns reads as follows:

> Filing of consolidated returns may be permitted or required in accordance with rules and regulations prescribed by the Tax Administrator. *Any affiliated group which files a consolidated return for federal income tax purposes pursuant to section 1501 of the Internal Revenue Code may file a consolidated return with the City of Bedford Heights. However, once the affiliated group has elected to file a consolidated return or a separate return with the City, the affiliated group may not change their method of filing in any subsequent tax year without written approval from the Administrator.*

(Italics added to show 2004 amendment.) Bedford Heights Codified Ordinances 173.14.

{¶ 11} The ordinance providing for amended returns and refunds reads as follows:

> Where necessary an amended return must be filed in order to report additional income and pay additional tax due, or claim a refund of tax overpaid, subject to the requirements, limitations, or both, contained in Sections 173.30 through 173.35. Such amended return shall be on a form obtainable on request from the Tax Administrator. A taxpayer may not change the method of accounting or apportionment of net profits after the due date for filing the original return.

Bedford Heights Codified Ordinances 173.15(a).

{¶ 12} The RITA rule reads as follows, with language that was added in 2009 italicized:

> Where necessary, an amended return must be filed in order to report additional income and pay additional tax due or claim a refund of tax overpaid subject to the requirements or limitations contained in the Ordinance. Such return shall be clearly marked "Amended." A taxpayer may not change the method of accounting or apportionment of net profits, *nor the method of filing (i.e., single or consolidated),* after the due date for filing the original return. Amended returns cannot be filed after three (3) years from the original filing date.

{¶ 13} In deciding whether an entity's change from filing a separate return to filing a consolidated return was prohibited, the BTA noted that Frozen Foods argued that "a change in the 'method of accounting' encompasses only cash versus accrual accounting." 2015 Ohio Tax LEXIS 1659, 5. The BTA reasoned that if changing a separate return to a consolidated return was a prohibited change in the method of accounting, then RITA would not have had to amend its rule in 2009 to specifically address the method of filing. On this basis, the BTA held that Frozen Foods' amended return did not qualify as a change in the method of accounting. *Id.*

{¶ 14} We reject the BTA's conclusion both because of the language of the city ordinance and because of the meaning of the term "change in method of accounting" in federal law. First, close inspection of the language of Bedford Heights Codified Ordinance 173.15(a) supports a restrictive view of the circumstances that justify amended returns. Amended returns may be filed

"[w]here necessary * * * in order to report additional income and pay additional tax due, or claim a refund of tax overpaid."

{¶ 15} Frozen Foods' amended return does not claim a refund of overpaid taxes. No one argues that its original separate filing was anything but both legally proper and factually correct as to the amount of tax owed and duly paid. The amended return does not claim a deduction or credit that the company forgot to claim and does not seek a tax benefit that it was entitled to that was omitted on the separate return.

{¶ 16} Bedford Heights Codified Ordinance 175.15(a) is a remedial provision that should be construed liberally in favor of furnishing the remedy it was enacted to provide but should not be construed to create a remedy that was not intended. *See Sheldon Rd. Assocs., L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 131 Ohio St.3d 201, 2012-Ohio-581, 963 N.E.2d 794, ¶ 27; *Phoenix Amusement Co. v. Glander*, 148 Ohio St. 592, 595-596, 76 N.E.2d 605 (1947). The principle of liberal construction has been applied to a "provision passed for the purpose of 'protecting the citizen from illegal exactions,' " *Sheldon Rd.*, ¶ 27, quoting *Stephan v. Daniels*, 27 Ohio St. 527, 536 (1875).

{¶ 17} As the court noted in *Phoenix Amusement*:

> In approaching the problem of making a correct and reasonable interpretation of the provision [for applying for a refund], with respect to the time when the 90-day period starts to run, it should be borne in mind that the applicant is *not trying* to evade taxes or *to reduce or minimize a tax assessment legally made*, but is trying to recover *tax moneys which never should have been collected in the first place*.

(Emphasis added.) *Id*. at 595. Because the original separate return was accurate and the payment made based on that return was legal, Frozen Foods' payment does not involve an "illegal exaction" by the city. And there was no attempt to "recover tax moneys which never should have been collected in the first place." Instead, the amended return takes a broadly different approach to the basic computation of taxable income. Frozen Foods tries to "reduce or minimize a tax assessment legally made," i.e., the assessment made on the original separate return. The new approach to computing Frozen Foods' taxable income lies within the intended scope of a prohibited change in the method of accounting. But the taxpayer itself chose which method to use in originally reporting its income, and this militates against viewing the tax paid on that return as an illegal exaction. In summary, the liberal construction of a refund provision in favor of the taxpayer does not advance Frozen Foods' claims.

{¶ 18} Second, contrary to the argument advanced by Frozen Foods at the BTA, federal treasury regulations do not state that "a change in the 'method of accounting' " would encompass "only cash versus accrual accounting." 2015 Ohio Tax LEXIS 1659, 5. The treasury regulations support a more expansive view of what constitutes a change in the method of accounting.

{¶ 19} First, we note what is *not* a "method of accounting" under federal law. A change in the method of accounting does not include the "correction of mathematical or posting errors" or of computational errors in determining tax liability. 26 C.F.R. 1.446-1(e)(2)(ii)(b). Thus, Bedford Heights Codified Ordinance 173.15(a) appears to target the type of error correction excluded from the federal definition of "change in method of accounting."

{¶ 20} Next, we examine the criteria that determine whether a change is a change in the method of accounting and whether those factors would apply to the change from filing a separate return to filing a consolidated return. Broadly, a "change in the method of accounting includes a change in the overall plan of

accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan." 26 C.F.R. 1.446-1(e)(2)(ii)(a). More specifically, that includes "change[s] involving the adoption, use or discontinuance of any other specialized method of computing taxable income, such as the crop method" and "change[s] where the Internal Revenue Code and regulations under the Internal Revenue Code specifically require that the consent of the Commissioner [of Internal Revenue] must be obtained before adopting such a change." *Id.*

{¶ 21} On the one hand, a change from filing a separate return to filing a consolidated return systematically affects the computation of taxable income by aggregating transactions of individual members of the consolidated group. A consolidated return also eliminates the tax effect of transactions within the affiliate group that would otherwise affect the taxable income of the members of the group as an individual taxpaying entity. *See* 26 C.F.R. 1.1502-11 through 1.1502-28; 26 C.F.R. 1.1502-12(a) (the "separate taxable income" of each member of the group, which will be aggregated for the entire group under 1.1502-11, must be computed in accordance with 1.1502-13); 26 C.F.R. 1.1502-13 (providing rules for treating transactions between companies within the consolidated group as if they were divisions of the same corporation).

{¶ 22} On the other hand, although statutes and regulations allow the filing of a consolidated return upon the consent of the members of the group, 26 U.S.C. 1501 and 26 C.F.R. 1.1502-75(a), reverting from filing a consolidated return to filing a separate return *requires good cause and approval of the IRS*, 26 C.F.R. 1.1502-75(c). The regulation requires the choice to file a consolidated return be made by the due date of the return for the common parent of the consolidated group. *Id.* at 1.1502-75(a). In other words, an entity that chose initially to file separately cannot amend its return by filing a consolidated return as part of an affiliated group. *See Internal Revenue Manual*, Section 4.11.6.3(1) (May 13, 2005) ("A taxpayer

filing its first return may adopt any permissible method of accounting," but "[o]nce the taxpayer adopts a proper method of accounting by filing its return using such method, it may not adopt a different method of accounting by the filing of an amended return").

{¶ 23} This review of the treasury regulations supports our conclusion that the change from filing a separate return to filing a consolidated return constitutes a change in the method of accounting prohibited under the Bedford Heights ordinance.

{¶ 24} Finally, the BTA held that RITA's amendment of one of its rules in 2009 to specify that a change in the method of filing was prohibited established that a "method of accounting" did not encompass the method of filing before the amendment. We reject this holding because there is no impediment to construing the 2009 amendment of the RITA rule as *a clarification rather than a substantive change*. *Accord NLO, Inc. v. Limbach*, 66 Ohio St.3d 389, 393, 613 N.E.2d 193 (1993) (statutory change codified prior case-law holding); *Williams v. Akron*, 54 Ohio St.2d 136, 141, 374 N.E.2d 1378 (1978) (constitutional amendment was intended only to clarify language); *Bailey v. Evatt*, 142 Ohio St. 616, 621, 53 N.E.2d 812 (1944) (statutory amendment to exemption served to clarify existing scope rather than add substantive changes).

*R.C. 718.06 does not prohibit cities from limiting refund claims*

{¶ 25} It is now necessary to consider Frozen Foods' contention that state law preempts a local government's limitation on refund claims that would preclude a change from filing a separate return to filing a consolidated return. If that is correct, then state law preempted Bedford Heights' prohibition of a change in the method of accounting in this case. In 2000, the General Assembly amended R.C. Chapter 718, which imposes limitations on the way cities tax income. Sub.H.B. No. 477, 148 Ohio Laws, Part II, 5120. The act stated:

10

On and after January 1, 2003, any municipal corporation that imposes a tax on the income or net profits of corporations shall accept for filing a consolidated income tax return from any affiliated group of corporations subject to the municipal corporation's tax if that affiliated group filed for the same tax reporting period a consolidated return for federal income tax purposes.

Former R.C. 718.06, 148 Ohio Laws, Part II, at 5126.

{¶ 26} Bedford Heights Ordinance 173.14(a) was amended effective December 21, 2004. While the original language had permitted consolidated returns in accordance with city regulations, new language was added stating that an affiliated group "may not change their method of filing in any subsequent tax year without written approval from the Administrator."

{¶ 27} Thus, both ordinance and state law expressly permitted filing consolidated returns in tax years 2005, 2006, and 2007. But during that entire period, city law also barred the filing of a refund claim based on a change in the method of accounting or a change in the method of apportionment. Thus, if the change from filing a single return to filing a consolidated return constituted a change in an accounting or apportionment method, the change was barred when filing amended returns.

{¶ 28} We reject Frozen Foods' preemption argument. The plain language of the state law does not override the city's power to bar a change of accounting or apportionment method when filing an amended return. The lack of an explicit limitation is fatal to this argument.

{¶ 29} Bedford Heights' taxing authority is one of the "powers of local self-government," Ohio Constitution, Article XVIII, Section 3, enjoyed by Ohio's chartered subdivisions, but it is subject to state control under two provisions of the Ohio Constitution: Article XVIII, Section 13, providing that "[l]aws may be passed

11

to limit the power of municipalities to levy taxes and incur debts," and Article XIII, Section 6, providing that the General Assembly "shall provide for the organization of cities, and incorporated villages, by general laws, and restrict their power of taxation."  Although R.C. Chapter 718 purports to broadly define what local income-tax laws must look like, we have held that the General Assembly's exercise of authority with respect to municipal taxation strictly involves *imposing limits* on the power to tax; state law may not be construed as imposing local taxes by overriding an exempting provision of local law.  *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 21-22.  In addition, the preclusive power of state law is confined to those limitations that are expressly stated in the state legislation—there is no implied preemption of local tax law.  *Cincinnati Bell Tel. Co. v. Cincinnati*, 81 Ohio St.3d 599, 605, 693 N.E.2d 212 (1998) ("it is evident that a proper exercise of this limiting power requires an express act of restriction by the General Assembly"); *compare Panther II Transp., Inc. v. Seville Bd. of Income Tax Rev*., 138 Ohio St.3d 495, 2014-Ohio-1011, 8 N.E.3d 904 (broad preemptive statute barred imposition of local net-profits tax because state law explicitly protected *the category of taxpayer* from local taxes, even though the state law did not specifically mention the type of local tax at issue).

{¶ 30} Under this case law, if former R.C. 718.06 was an exercise of the General Assembly's statutory power, the statute must have limited local power to impose tax and the limitation must have been explicitly stated.  Former R.C. 718.06 did limit local taxing authority by requiring the city to "accept for filing a consolidated income tax return."  Under Bedford Heights' ordinance, Frozen Foods could have filed, and Bedford Heights was required to accept, a consolidated return for each tax year at issue, but for the original filings it received not a consolidated but a separate return.  Once the original return was filed, the mandate of R.C. 718.06 expired; the statute did not purport to address whether a the taxpayer could *change*

*to a consolidated method* by filing an amended return, an issue that involved policy decisions at the local level that the General Assembly did not address.

**{¶ 31}** Changing from filing a separate return to a consolidated return did not correct any tax-accounting error in the original return. The amount of tax reported and paid on the original return was perfectly permissible and legal under state as well as local law, given that the taxpayer originally exercised the right to file a separate return rather than a consolidated return. To prohibit the city from refusing *the amended return* would constitute *an additional limit on the city's taxing authority* that was not explicitly stated in R.C. 718.06. We have rejected this type of implied limitation in the past.

**{¶ 32}** The city had another strong policy reason to limit refund claims. The city's fiscal stability depended upon the finality of the filing election, as the present case demonstrates. We emphasize the distinction between the correction of errors or omissions on an original return and the election of a substantially different method of reporting and computing income: by ordinance, the city was liable to grant relief in the former instance, but the refund ordinance foreclosed the city's liability in the latter.

*Frozen Foods' constitutional arguments need not be addressed*

**{¶ 33}** The BTA predicated its denial of Frozen Foods' refund claim on a 2009 amendment to RITA's rules that explicitly prohibited a change from a separate return to a consolidated return when filing an amended return. The taxpayer has raised constitutional challenges to this ruling, including a claim of unconstitutional retroactivity and improper delegation of authority. Because we resolve this case on the basis of Bedford Heights' limitation prohibiting a change in the method of account, we need not consider the theory on which the BTA based its disposition of the case.

## Conclusion

{¶ 34} For the foregoing reasons, we hold that the city ordinance barred a change from a separate return to a consolidated return when filing an amended return, because the change constituted a change in the method of accounting prohibited by the ordinance. We vacate the remainder of the BTA's decision and do not reach any of the other issues presented. Finally, we affirm the decision to deny Frozen Foods' claim for a refund.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY and FRENCH, JJ.

_____

**O'DONNELL, J., dissenting.**

{¶ 35} Respectfully, I dissent.

{¶ 36} On March 9, 2015, the Board of Tax Appeals ("BTA") affirmed the decision of the Bedford Heights Income Tax Board of Review denying the administrative appeal brought by New York Frozen Foods, Inc., in which it sought to amend its net profits tax returns for 2005, 2006, and 2007.

{¶ 37} Pursuant to R.C. 5717.03(F), this decision is "final and conclusive * * * unless reversed, vacated, or modified as provided in section 5717.04 of the Revised Code." R.C. 5717.04, in turn, provides that "[t]he proceeding to obtain a reversal, vacation, or modification of a decision of the board of tax appeals shall be by appeal to the supreme court or the court of appeals for the county in which the property taxed is situate or in which the taxpayer resides." This statute further provides, "Such appeals shall be taken within thirty days after the date of the entry of the decision of the board on the journal of its proceedings, as provided by such section, by the filing by appellant of a notice of appeal with the court to which the appeal is taken and the board."

**{¶ 38}** In this case, the record shows that rather than file a timely notice of appeal with this court or the court of appeals, New York Frozen Foods moved for reconsideration of the BTA's decision on March 18, 2015. In response to that motion, the BTA not only denied reconsideration on March 20, 2015, but also purported to vacate its decision to correct a typographical error, and it then republished the same opinion verbatim, adding only a statement denying reconsideration and vacating its prior order and correcting the typographical error to change the word "disagree" to "agree." New York Frozen Foods filed its notice of appeal in this court on April 10, 2015—32 days after the BTA's March 9 decision but only 21 days after the republished March 20 BTA decision.

**{¶ 39}** New York Frozen Foods filed an untimely appeal. Neither R.C. 5717.03 nor 5717.04 provides authority for the BTA to vacate its own final decision on reconsideration; rather, those statutes establish that a decision of the BTA is final unless it is appealed to this court or the court of appeals. Our caselaw, however, suggests that the BTA has inherent authority to reconsider and vacate its own decisions. *See, e.g., Natl. Tube Co. v. Ayres*, 152 Ohio St. 255, 262, 89 N.E.2d 129 (1949); *1495 Jaeger, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 132 Ohio St.3d 222, 2012-Ohio-2680, 970 N.E.2d 949, ¶ 15. But this line of cases is inconsistent with the statutory requirement that "[t]he proceeding to obtain a reversal, *vacation*, or modification of a decision of the board of tax appeals *shall be by appeal * * *.*" (Emphasis added.) R.C. 5717.04. Because the BTA is a creature of statute, it is necessarily limited to the powers conferred by the legislature, *Delaney v. Testa*, 128 Ohio St.3d 248, 2011-Ohio-550, 943 N.E.2d 546, ¶ 20, and therefore, it has no statutory authority to vacate its own final order as a substitute for an appeal.

**{¶ 40}** Nor can a tribunal vacate and reissue a final order to extend the time for a party to commence an appeal. *See State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382, ¶ 8 ("As a general matter, a trial court does not have the power to reenter a judgment in order to circumvent the App.R. 4(A) limitation

period for the filing of an appeal"); *State v. Bernard*, 2d Dist. Montgomery No. 18058, 2000 WL 679008, *2 (May 26, 2000) ("the trial court lacked authority to vacate and reinstate its judgment in order to facilitate Bernard's appeal"); *Kertes Ents., Inc. v. Orange Village Planning Zoning Comm.*, 68 Ohio App.3d 48, 49, 587 N.E.2d 409 (8th Dist.1990) ("the court may not re-enter judgment to circumvent the App.R. 4(A) limitation period"). The BTA's decision to vacate its original decision and then republish it adding only a statement denying reconsideration and vacating the original order to correct a clerical error contemplated extending the time for perfecting an appeal.

{¶ 41} However, the BTA decision denying reconsideration and correcting the clerical error is not itself a final appealable order. In *Southside Community Dev. Corp. v. Levin*, 116 Ohio St.3d 1209, 2007-Ohio-6665, 878 N.E.2d 1048, ¶ 5, we explained that in determining whether a BTA decision is a final appealable order, "R.C. 2505.02(B)(2) applies, and that provision deems to be 'final' an 'order that affects a substantial right made in a special proceeding.' "

{¶ 42} Here, the BTA issued a final order on March 9, 2015, and the March 20, 2015 order appealed from in this case did not affect any substantial rights. Denial of reconsideration left the parties in the same position that they were in before the denial, and notably, the BTA's procedural rules clarify that "a motion for reconsideration shall not enlarge the period of time upon which an appeal may be taken from this board nor shall the filing of such motion suspend or toll the statutory appeal period," Ohio Adm.Code 5717-1-12(D).

{¶ 43} In reality, republishing the prior decision to correct the clerical error is in substance a nunc pro tunc entry. Although "administrative tribunals possess inherent authority to correct errors in judgment entries so that the record speaks the truth[,] * * * *nunc pro tunc* entries are limited in proper use to reflecting what the court actually decided." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995). And as we noted in *State v. Thompson*, 141 Ohio St.3d 254,

16

2014-Ohio-4751, 23 N.E.3d 1096, ¶ 43, "a nunc pro tunc entry does not replace the original judgment entry; it relates back to the original entry."

{¶ 44} Thus, a nunc pro tunc entry does not affect substantive rights, and it is not a new final order for purposes of appeal. *Perfection Stove Co. v. Scherer*, 120 Ohio St. 445, 448-449, 166 N.E. 376 (1929) (nunc pro tunc entry that "did not operate to deprive the defendants in error of any rights which the previous order had accorded them, nor make that order any less final, was not effective to postpone the date when the period within which an appeal is authorized to be prosecuted begins to run"); *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, syllabus ("A nunc pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken"); *Gold Touch, Inc. v. TJS Lab, Inc.*, 130 Ohio App.3d 106, 109, 719 N.E.2d 629 (8th Dist.1998) ("the use of the *nunc pro tunc* order in this case did not act to extend the normal thirty-day filing period for an appeal since no substantive changes were made to the final order").

{¶ 45} Accordingly, the BTA entered the only final appealable order in this case on March 9, 2015, and its republished March 20, 2015 entry denying reconsideration, correcting a clerical error, and purporting to vacate the March 9 entry did not restart the time period for perfecting an appeal. Therefore, New York Frozen Food's notice of appeal filed on April 10, 2015, is untimely and this matter should be dismissed.

KENNEDY and FRENCH, JJ., concur in the foregoing opinion.

_____

Zaino, Hall & Farrin, L.L.C., Stephen K. Hall, and Richard C. Farrin, for appellants and cross-appellees.

Calfee, Halter & Griswold, L.L.P., Anthony F. Stringer, Matthew A. Chiricosta, and Thomas R. O'Donnell, for appellees and cross-appellants.

Amy L. Arrighi, in support of appellees and cross-appellants for amicus curiae, Regional Income Tax Agency.

_____