[Cite as *Stuck v. Miami Valley Hosp.*, 2020-Ohio-129.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| JOHN H. STUCK, EXECUTOR OF THE ESTATE OF DAVID STUCK | : | |
| | : | |
| | : | Appellate Case No. 28233 |
| Plaintiff-Appellant | : | |
| Cross-Appellee | : | Trial Court Case No. 2017-CV-139 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| MIAMI VALLEY HOSPITAL, et al. | : | |
| | : | |
| Defendants-Appellees Cross-Appellants | | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 17th day of January, 2020.

. . . . . . . . . . .

DWIGHT D. BRANNON, Atty. Reg. No. 0021657, and MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 West Second Street, Suite 900, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant and Cross-Appellee, John H. Stuck, Executor

NEIL F. FREUND, Atty. Reg. No. 0012183, and SHANNON K. BOCKELMAN, Atty. Reg. No. 0082590, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
    Attorneys for Defendants-Appellees/Cross-Appellants Miami Valley Hospital and Premier Health Partners

SUSAN BLASIK-MILLER, Atty. Reg. No. 0005248 and ROBERT N. SNYDER, Atty. Reg. No. 0030556, Fifth Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
    Attorneys for Defendants-Appellees/Cross-Appellants Travis Perry, M.D., Kelli Huesman, P.A., and Comprehensive Burn and Wound Specialists

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} The estate of David M. Stuck[1] appeals from the trial court's grant of partial summary judgment against Stuck on the third cause of action set forth in his complaint against Miami Valley Hospital, Premier Health Partners, Erik Weise, M.D., Dayton Physicians, LLC, Travis L. Perry, M.D., Kelli Huesman, P.A., Comprehensive Burn and Wound Specialists, and other defendants. Also pending before us are the cross-appeals of Miami Valley Hospital, Premier Health Partners, Perry, Huesman, and Comprehensive Burn and Wound Specialists, as well as those parties' motions to strike certain attachments to Stuck's appellate brief.

{¶ 2} For the reasons that follow, the motions to strike are granted in part and denied in part, Stuck's appeal and the cross-appeals are without merit, and the judgment of the trial court will be affirmed.

**Factual and Procedural Background**

{¶ 3} Miami Valley Hospital ("MVH") is a Dayton, Ohio medical facility operated by Premier Health Partners ("PHP"). On January 21, 2013, David M. Stuck underwent surgery at MVH for a recurrence of renal cell carcinoma. Erik Weise, M.D., a urologist practicing with Dayton Physicians, LLC ("Dayton Physicians"), performed Stuck's surgery.

{¶ 4} While he remained at MVH in the days following surgery, Stuck manifested at least one pressure ulcer in the area of his buttocks and coccyx, which ulcer(s) allegedly worsened over the course of his hospital stay. According to Stuck, Weise requested that Travis L. Perry, M.D., a general surgeon practicing with Comprehensive Burn and Wound

---

[1] On December 3, 2019, this Court granted an unopposed motion to substitute as the Plaintiff-Appellant John H. Stuck, David Stuck's brother and the duly-appointed executor of his estate, in place of David Stuck, who died on October 30, 2019. We nevertheless shall use "Stuck" throughout this opinion to refer to David Stuck.

Specialists ("CBWS"), consult with Stuck for treatment of the ulcer(s). Perry, physician's assistant Kelli Huesman of CBWS, and other unnamed health care providers purportedly participated in Stuck's treatment through his discharge date of February 13, 2013.

{¶ 5} On February 21, 2013, Stuck was readmitted to MVH after presenting to the emergency room with "sepsis, Stage 4 decubitus ulcers, and suspected ischiorectal abscess and/or cellulitus." (Doc. #1, ¶ 30). Stuck allegedly sustained severe and permanent injuries and incurred substantial and ongoing medical expenses due to medical conditions that developed following his January 2013 surgery, and he purportedly required treatment for years thereafter.[2]

{¶ 6} After voluntarily dismissing pursuant to Civ.R. 41(A) a complaint filed in 2014,[3] Stuck re-filed a complaint in the Montgomery County Court of Common Pleas, setting forth causes of action for medical negligence, declaratory relief, and a variety of other claims. (Doc. #1). MVH, PHP, Weise, Dayton Physicians, Perry, Huesman, and CBWS (collectively, "the Medical Defendants") were among those named as defendants in that lawsuit.

{¶ 7} Following substantial discovery and other pretrial proceedings, three groups of the Medical Defendants filed separate motions for partial summary judgment as to Stuck's third cause of action, which requested declaratory relief regarding "hospital

---

[2] Stuck's appellate brief asserts that the development and delayed healing of his ulcers was attributable at least in part to a "Wound Vac sponge" that was left inside his body and became "chronically infected." (Brief of Appellant Stuck, p. 9). No reference to such sponge appears in Stuck's complaint (*see* Doc. #1), however, and that allegation was not mentioned by the trial court in rendering its partial summary judgment decision.

[3] *See Stuck v. Miami Valley Hosp.*, Montgomery C.P. No. 2014 CV 00785 (Feb. 23, 2016).

acquired conditions." *See* Docs. #75 (by MVH and PHP); #76 (by Perry, Huesman, and CBWS); #78 (by Weise and Dayton Physicians). Specifically, that third cause of action sought a declaratory finding that the occurrence of health conditions categorized as "Never Events" and/or "Hospital Acquired Conditions" constituted negligence per se and/or warranted imposing strict liability. (Doc. #1, ¶ 42). Alternatively, the third cause of action sought a declaration that the occurrence of "Never Events" and/or "Hospital Acquired Conditions" warranted applying the doctrine of res ipsa loquitur and eliminating the causation element of a negligence claim. (*Id.* at ¶ 43-44). In requesting judgment in their favor, the Medical Defendants argued that Stuck's third cause of action was not supported by existing law and was contrary to federal law.

{¶ 8} On November 28, 2018, the trial court entered partial summary judgment against Stuck on his third cause of action and "dismissed" that cause of action. (Doc. #104, p. 9). Pursuant to Civ.R. 54(B), the trial court certified that no just cause existed for delaying any appeal.

{¶ 9} Stuck's appeal from that judgment raises this single assignment of error: "The trial court committed reversible error by granting partial summary judgment as to [Stuck's] cause of action for declaratory judgment regarding never events."

{¶ 10} MVH and PHP, and separately, Perry, Huesman, and CBWS, filed cross-appeals challenging the trial court's certification of its November 28, 2018 decision as a final, appealable order. This Court denied the Cross-Appellants' motions to dismiss Stuck's appeal on that basis, but noted that such denial was "distinct from, and does not necessarily resolve, the issue that Appellees may raise in their cross-appeals about the propriety of the trial court's certification pursuant to Civ.R. 54(B)." (Decision and Entry,

April 29, 2019). The cross-appeals therefore remain pending.

{¶ 11} Also pending are the same Cross-Appellants' motions to strike certain appendices to Stuck's appellate brief. Because those motions may affect the materials before us as to Stuck's appeal, we will address the motions to strike before considering Stuck's assignment of error.

### Cross-Appeals

{¶ 12} The appellate briefs filed by MVH, PHP, Perry, Huesman, and CBWS contain no arguments directed toward the Civ.R. 54(B) certification that was the subject of their cross-appeals. Accordingly, the analysis set forth in our April 29, 2019 decision denying those parties' motion to dismiss Stuck's appeal also fully addresses the merits of their cross-appeals. The cross-appeals of MVH, PHP, Perry, Huesman, and CBWS are without merit.

### Cross-Appellants' Motions to Strike Attachments to Plaintiff-Appellant's Brief

{¶ 13} MVH, PHP, Perry, Huesman, and CBWS assert that most of the documents attached as appendices to Stuck's appellate brief do not appear in the trial court record. Accordingly, they ask this Court to strike Appendix 1, 2 and 3 (copies of decisions on motions in limine in unrelated common pleas court cases); Appendix 4 (an unauthenticated copy of an "anonymous" document that bears the printed words "Premier Health" and purports to set forth a "policy" regarding patient wound care); Appendix 5 A-M (a series of photographs that appear to depict David Stuck's wound on various dates between March 8 and July 26, 2013); Appendix 6-C (purporting to be an excerpt from a transcript of the videotaped deposition of Greg Sanchez) [4] ; Appendix 7 (an

---

[4] Notably, the excerpted pages do not include Sanchez's professional background or

unauthenticated copy of what purports to be a "booklet" produced by the Centers for Medicare and Medicaid Services regarding "Medicare Fraud & Abuse"); and Appendix 8, 9, 10, and 11 (unauthenticated copies of what appear to be published articles about policy regarding "hospital-acquired conditions").

{¶ 14} "It is 'a bedrock principle of appellate practice in Ohio * * * that an appeals court is limited to the record of the proceedings at trial.' " *State v. Morris*, 2d Dist. Montgomery Nos. 26949, 26960, 2016-Ohio-7417, ¶ 2, quoting *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13. "A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus. Further, pursuant to App.R. 16(E), the unnecessary attachment of legal authority available through online sources is "disfavored" and "discouraged."

{¶ 15} Stuck's response clarifies that the photographs included in Appendix 5 to his brief were presented as exhibits to Perry's written deposition filed with the trial court on January 22, 2018. As those photographs do appear within the trial court record, the motions to strike Appendix 5 are denied. With regard to Appendix 4, we previously rejected Stuck's request to expand the record on appeal in order to include that document. (*See* Decision and Entry, September 3, 2019). The motions to strike Appendix 4 are granted. Because Sanchez's deposition transcript, from which Appendix 6-C was derived, does not appear on the trial court docket as having been filed in this case, the motion to strike that excerpt also is granted.

explain the precise nature of his relationship to this litigation.

{¶ 16} While Stuck characterizes the remainder of the challenged appendices as "legal authority" rather than evidentiary exhibits, that characterization does not necessarily justify their inclusion as attachments to his appellate brief. The decision appearing as Appendix 1 has been assigned a Westlaw citation; as stated above, App.R. 16(E) discourages the attachment of decisions so reported. Still, given that the decisions in Appendix 2 and 3 apparently are not reported "through online legal research databases," *see* App.R. 16(E), none of the first three appendices will be stricken.

{¶ 17} We are not persuaded that the remaining appendices constitute "legal authority" within the meaning of App.R. 16(E). Appendices 7 through 11 comprise health care policy information contained in a "booklet" and articles that presumably fall within the type of evidentiary material contemplated under Evid.R. 803(18). The mere fact that such material may expound upon certain federal regulatory provisions does not qualify such material as "legal authority." Furthermore, the material set forth in those appendices does not appear within the trial court record. Accordingly, those attachments will be stricken.

{¶ 18} MVH and PHP's and Perry, Huesman, and CBWS's motions to strike are denied as to Appendices 1, 2, 3, and 5 to Stuck's appellate brief, but are granted in all other respects. Accordingly, Appendices 4, 6-C, 7, 8, 9, 10, and 11 to Brief of Appellant Stuck are stricken from the record on appeal.

**Stuck's Assignment of Error – Erroneous Grant of Partial Summary Judgment**

{¶ 19} Stuck maintains that the trial court erred by entering summary judgment against him on his third cause of action.[5] He first contends that, as a matter of law, the

---

[5] Although Stuck's appellate brief suggests that this Court should direct that summary judgment instead be granted in his favor as to this issue (*see* Brief of Appellant Stuck, p. 10), the record contains no indication that Stuck moved for summary judgment in the trial

occurrence of an in-hospital "never event" amounts to negligence per se, obviating the need to prove either the existence or breach of a duty. Alternatively, he argues that the occurrence of a "never event" warrants applying the doctrine of res ipsa loquitur, such that he need not prove causation. In addition, Stuck asserts that the trial court erred by failing to consider whether Stuck had presented expert testimony showing that the occurrence of a "never event" breached the standard of care; he claims that his experts *did* so testify.

{¶ 20} Stuck next argues that 42 U.S.C. 18122, a federal statute cited by the trial court in support of its decision, (1) actually supports his position, and (2) does not apply retroactively to his case and is superseded by Ohio law. He asserts similar arguments with respect to two Ohio statutes, R.C. 2317.45(B) and R.C. 2317.44(B), which specify that 42 U.S.C. 1395 does not establish a standard of care for medical claims in Ohio. Finally, he urges that the Medical Defendants' own policies and procedures regarding "never events" entitle him "to raise the issue of never events at trial" – i.e., that evidence regarding "never events" is "admissible." (Brief of Appellant Stuck, p. 26).

a. Standard of Review

{¶ 21} Appellate review of a trial court's ruling on a summary judgment motion is de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 38-42, citing *Helton v. Scioto Cty. Bd. of Commrs.,* 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). De novo review " 'means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' " *Riverside v. State*, 2016-Ohio-2881, 64

court, and that relief is not available to him on this appeal.

N.E.3d 504, ¶ 21 (2d Dist.), quoting *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co., Inc.,* 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). On such review, we do not grant deference to the trial court's determinations. *Id.*

{¶ 22} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher* at 292-293.

{¶ 23} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Id.;* Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*; Civ.R. 56(C).

b.  *Law as to Medical Negligence Claims*

{¶ 24} In general, the elements of a medical negligence claim in Ohio are the same as those of a standard negligence claim – i.e., the cause of action "requires proof of (1) a

duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 23, citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984) and *Loudin v. Radiology & Imaging Servs., Inc.*, 128 Ohio St.3d 555, 2011-Ohio-1817, 948 N.E.2d 944, ¶ 13. "The scope of any duty owed is the standard of care that an actor must exercise," which as to medical professionals is "the degree of care that a medical professional of ordinary skill, care, and diligence would exercise under similar circumstances." *Id.* at ¶ 27, citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1956), paragraph one of the syllabus.

{¶ 25}  Each element of a medical negligence claim, if factually relevant, must be considered "in the context of 'recognized standards * * * provided through expert testimony.' " *Id.* at ¶ 40, citing *Bruni* at 131-132. Failure to provide expert testimony establishing the applicable standard of care "is fatal to the presentation of a prima facie case of medical negligence." *Grieser v. Janis*, 2017-Ohio-8896, 100 N.E.3d 1176, ¶ 20 (10th Dist.), citing *Bruni* at 130.

   c.  Law as to "Never Events" and "Hospital Acquired Conditions"

{¶ 26}  The meaning of the terms "Never Event" and "Hospital Acquired Condition" is derived from federal sources. Although the two terms share a common origin, their scope is not necessarily identical. *See, e.g., Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419 (Mo.2016) (en banc); Crist, *Never Say Never: "Never Events" in Medicare*, 20 Health Matrix 437, 440 (2010).[6] "[H]ospital acquired conditions" are the subject of federal law

---

[6] A "Never Event" may not always be a "Hospital Acquired Condition" because "a patient

enacted in October 2008, which, "[i]n order to provide an incentive for * * * hospitals to reduce hospital acquired conditions," provides for a reduction in the amount of governmental medical benefits payable for inpatient hospital services related to such "conditions." 42 U.S.C. 1395ww(p)(1). In contrast, "the term 'never event' references proposed guidelines from the Centers for Medicare and Medicaid Services" ("CMS") with regard to the payment of benefits, but "the 'never event' language was not included in the final rule and the term is no longer used" for purposes of Medicare and Medicaid payment policy. *Dieser* at 434-435.

{¶ 27} To implement 42 U.S.C. 1395ww(p)(1)'s stated goal, CMS has developed a list of specific ailments or infirmities deemed to be "hospital acquired conditions" for which full payment should not be made. That list includes both "stage III and IV pressure ulcers" and "foreign object retained after surgery."[7] *See* Crist at 465, fn. 29. Given that the use of the terminology arose through Medicaid and Medicare policy, discussion of "never events" or "hospital acquired conditions" typically arises in litigation about the payment of medical benefits by the government or other health insurance plans. *See, e.g., IHC Health Servs., Inc. v. Wal-Mart Stores, Inc.*, D.Utah No. 2:15-cv-846-JNP-EJF, 2016 WL 3817682 (Sept. 26, 2018).

  d.  *Analysis*

  1.  Does federal law establish a standard of care?

---

could develop a non-apparent condition before [his or] her admittance to a hospital and unless the condition is detected by the hospital during admission [his or] her condition could be labeled as a 'Never Event.' " *Id.* at 465, fn. 25.

[7] While Stuck's argument that the retention of a Wound Vac sponge in his body was a "never event" (*see* fn. 2, above) may be correct, that factual contention is not germane to our resolution of the purely legal issue presented by this appeal.

{¶ 28} The trial court did not err in finding as a matter of law that the occurrence of a "never event" would not entitle Stuck to a determination that the Medical Defendants had committed negligence per se, or that strict liability or the doctrine of res ipsa loquitur applied. The parties' briefs reflect what Stuck's counsel at oral argument acknowledged is a paucity of Ohio legal authority regarding the significance of the terms "Never Events" and "Hospital Acquired Conditions" in the context of medical negligence actions. No Ohio case law supports the conclusion that federal enactments regarding "never events" or "hospital acquired conditions" altered the elements a plaintiff must prove in order to establish medical negligence in this state.

{¶ 29} As explained in one of two reported Ohio decisions that mention either term, the term "never event" was "coined" to describe medical results that "should never occur" in a hospital setting. *See Boykin v. Good Samaritan Hosp.*, Montgomery C.P. No. 2011 CV 01457, 2013 WL 12111353, *2 (May 31, 2013); *accord* Crist at 440 ("At a general level, a Never Event is a preventable condition that a patient acquires at a hospital[,] * * * distinct from the condition for which the hospital admitted the patient."). The trial court in *Boykin* overruled the defendant hospital's motion in limine to prevent cross-examination regarding the term "never event" or the Medicare/Medicaid reimbursement consequences of certain "hospital acquired conditions," but "defer[red] any ruling regarding the admissibility of these topics during the Plaintiffs' case." *Id.* Given the limited and preliminary nature of that ruling,[8] the *Boykin* decision provides little guidance as to the

---

[8] "An order granting or denying a motion *in limine* is a tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated." (Emphasis sic.) *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986), quoting *State v. Leslie*, 14 Ohio App.3d 343, 344, 471 N.E.2d 503 (2d Dist.1984). "In virtually all circumstances finality does not attach" when the motion is ruled upon. *Id.* at 202.

issue now before us.

{¶ 30} Two other Ohio common pleas court decisions, both unreported, likewise consist of rulings on motions in limine and fail to address whether or how the occurrence of "never events" or "hospital acquired conditions" affects the proof necessary in a medical negligence action. *See Ross v. Aultman Hosp.*, Stark C.P. No. 2017 CV 1903 (Sept. 21, 2018) (Brief of Appellant Stuck, Appx. 2); *Grossman v. Kettering Med. Ctr.*, Montgomery C.P. No. 2017 CV 01983 (May 14, 2019) (Brief of Appellant Stuck, Appx. 3). None of the foregoing decisions informs our current task.

{¶ 31} In the only other reported Ohio case to mention the term "never event," the trial court required a physician defendant in a medical negligence action to respond to a request for admission as to whether the in-hospital occurrence of a stage III or IV pressure ulcer "is a Never Event." *Dauterman v. Toledo Hosp.*, Lucas C.P. No. CI0200907328, 2010 WL 7096593 (May 21, 2010). That court expressly declined to address whether such information would be "admissible," finding only that the discovery request was "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Again, that decision carries little weight for purposes of the issue presented here.

{¶ 32} A few courts of other states have discussed "never events" or "hospital acquired conditions" more substantively in the context of causes of action for medical negligence, however. Among the reported decisions in which appellate courts of other states have considered the significance of "never events" with respect to medical malpractice actions, none appears to have concluded that the occurrence of a "never event" amounts to negligence per se or otherwise alters the proof that a plaintiff must present. *See, e.g., Dieser*, 498 S.W.3d 419; *Chava v. Hubbard*, Tex.App. No. 14-17-

00158-CV, 2018 WL 1918462 (Apr. 24, 2018); *In re Conservatorship for Hardt*, 242 Ariz. 449, 397 P.3d 1049 (Ariz.App.2017).

{¶ 33} *Hardt* involved a medical malpractice suit brought against a hospital on behalf of a patient who developed stage IV pressure ulcers while at that hospital. In *Hardt*, the Arizona Court of Appeals found no error in the trial court's exclusion of a Center for Medicaid and State Operations document "address[ing] Medicare billing and reimbursement policies * * * for 'selected hospital-acquired conditions,' " in part because the hospital's "billing practices were not at issue." *Id.* at ¶ 22. That court implicitly concluded that the patient's experiencing stage IV pressure ulcers was not dispositive of whether the hospital had breached the applicable standard of care.

{¶ 34} In *Chava*, a physician appealed the trial court's denial of his motion to dismiss a medical malpractice claim against him, arguing that an expert report produced by the plaintiffs was inadequate to sustain their wrongful death and survival claims. The expert's report stated that the plaintiffs' decedent had experienced a "never event" while in the hospital, and further opined that the defendant physician had violated the applicable standard of care. *Chava* at *2. Notably, despite the occurrence of a "never event," the appellate court acknowledged that a medical malpractice claim "requires an opinion that the alleged negligence of the medical provider proximately caused the plaintiff's injury." *Id.* at *3. The occurrence of a "never event" did not relieve the plaintiff of the need to establish the applicable standard of care, the defendant's breach of that standard, or proximate cause. *Id.* at *3-6.

{¶ 35} Finally, in *Dieser*, the Supreme Court of Missouri held that the plaintiff's counsel's use of the term "never event" while cross-examining the defendant hospital's

expert witness did not require reversal of the medical negligence verdict for the plaintiff, because "the jury was properly instructed as to the standard of care." *Dieser*, 498 S.W.3d at 435. In other words, although the plaintiff had developed a stage IV pressure ulcer – a "never event" – while hospitalized after pancreatic surgery, the plaintiff still was required to prove through expert testimony the applicable standard of care, the defendant's breach of that standard, and that the defendant's breach caused his injury. The court determined that references to "never events" during cross-examination did not improperly "chang[e] the case into one of strict liability or negligence *per se.*" (Emphasis sic.). *Id.* As with the *Chava* and *Hardt* decisions, the court in *Dieser* indirectly rejected the notion that the occurrence of a "never event" in any way altered the applicable standard of care or the proof necessary to establish a medical negligence claim.

**{¶ 36}** We agree with the conclusion of the other courts that have confronted this issue implicitly or explicitly. On its face, the federal legislation regarding "hospital acquired conditions" was enacted to incentivize hospitals to reduce the incidence of such conditions in order to improve the quality of patient care. *See* 42 U.S.C. 1395ww(p)(1).[9] Nothing in that statute or the regulations created thereunder suggests an intent to establish a new standard of care applicable to private causes of action alleging medical negligence. No court of which we are aware in this or any other state has held that the occurrence of a "never event" or a "hospital acquired condition" *alone* satisfies a medical negligence plaintiff's obligation to demonstrate the applicable standard of care, the defendant's breach of that duty, or the causal connection between the defendant's breach

---

[9] *See also* Dine, *Money Will Likely Be the Carrot, But What Stick Will Keep AOCs Accountable?*, 47 Loy.U.Chi.L.J. 1377, 1381 (2016) ("[T]hese quality standards are mere guidelines and fail to establish the standard of care in a medical malpractice case.").

and the plaintiff's damages. The trial court did not err by granting the Medical Defendants' motions for summary judgment as to Stuck's third cause of action requesting a declaration that strict liability, negligence per se, or res ipsa loquitur attaches as to his medical negligence claim.

2. Does later enactment of clarifying legislation change that result?

{¶ 37} Despite the absence from 42 U.S.C. 1395ww of any indication of an intent to alter the standard of care in private medical negligence actions, Stuck argues that subsequent federal law demonstrates that 42 U.S.C. 1395ww had precisely that effect. In support of that argument, he cites a federal law that took effect on April 16, 2015,[10] which states in pertinent part as follows:

> * * * [T]he development, recognition, or implementation of any guideline or other standard under any Federal health care provision shall not be construed to establish the standard of care or duty of care owed by a health care provider to a patient in any medical malpractice or medical product liability action or claim.

42 U.S.C. 18122(1).

{¶ 38} According to Stuck, the enactment of 42 U.S.C. 18122(1) would have been unnecessary had 42 U.S.C. 1395ww *not* altered the standard of care when it took effect in 2008. He thus argues that at the time of his 2013 injury, the standard of care in place was that established by 42 U.S.C. 1395ww with regard to "hospital acquired conditions" or "never events." We reject that reasoning.

{¶ 39} In interpreting federal statutory law, the United States Supreme Court has

---

[10] 42 U.S.C. 1395 was effective in 2008; Stuck's injury occurred in 2013.

stated: "Congress does not make 'radical – but entirely implicit -- change[s]' through 'technical and conforming amendments.' Or to use the more general (and snappier) formulation of that rule, * * * Congress does not 'hide elephants in mouseholes.' " (Citations omitted.) *Cyan, Inc. v. Beaver County Emps. Retirement Fund*, __ U.S. __, 138 S.Ct. 1061, 1071, 200 L.Ed.2d 332 (2018). Had it intended 42 U.S.C. 1395ww to institute the sweeping change for which Stuck advocates, surely Congress could have made its intent more conspicuous.

{¶ 40} The same result follows under principles of statutory interpretation in this state. "If the language of a statute is plain and unambiguous and conveys a clear and definite meaning, then there is no need * * * to resort to the rules of statutory interpretation[.]" *State v. Parker*, Ohio Slip Op. No. 2019-Ohio-3848, ___ N.E.3d ___, ¶ 21, citing *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, 848 N.E.2d 496, ¶ 12. We read 42 U.S.C. 1395ww to be clear and definite in its intent to codify "hospital acquired condition" guidelines only for the purpose of calculating Medicaid and Medicare reimbursements. That statute requires no further interpretation.

{¶ 41} A statutory amendment may be enacted "not [to] change the law but merely * * * to clarify a statute." *See Pettit v. Buhrts*, 10th Dist. Franklin No. 95APE06-765, 1996 WL 188563, *6 (Apr. 18, 1996) (Holmes, J., dissenting). Again applying the principles of statutory interpretation, it is clear that 42 U.S.C. 18122(1) was enacted not to revert back from a change effectuated by 42 U.S.C. 1395ww, but rather to clarify that 42 U.S.C. 1395ww never was intended to establish a standard of care for medical malpractice claims. Where "there is no impediment to construing [a statutory or regulatory] amendment * * * as *a clarification rather than a substantive change*," such amendment

should be treated as a clarification. (Emphasis sic.) *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Revision*, 150 Ohio St.3d 836, 2016-Ohio-7582, 82 N.E.3d 1105, ¶ 24, citing *NLO, Inc. v. Limbach,* 66 Ohio St.3d 389, 393, 613 N.E.2d 193 (1993); *Williams v. Akron,* 54 Ohio St.2d 136, 141, 374 N.E.2d 1378 (1978); *Bailey v. Evatt,* 142 Ohio St. 616, 621, 53 N.E.2d 812 (1944). No statutory language dissuades us from viewing 42 U.S.C. 18122(1) as being a clarification rather than a substantive change.

{¶ 42} Further, "[i]t is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, 78 N.E.3d 851, ¶ 47, quoting *Mishr v. Poland Bd. of Zoning Appeals,* 76 Ohio St.3d 238, 240, 667 N.E.2d 365 (1996). We can imagine no reason why Congress would have intended to impose a new standard of care governing medical negligence actions in every state between 2008 and 2015, but then abandon that standard without explanation thereafter. Were it necessary for us to engage in statutory interpretation to order to determine 42 U.S.C. 18122(1)'s meaning (which, given the statute's lack of ambiguity, it is not), we would not interpret that statute in such a way as to yield such a result.

{¶ 43} Having determined the interplay between 42 U.S.C. 18122(1) and 42 U.S.C. 1395ww, and having concluded that the "never event" or "hospital acquired condition" language never was the law of this state[11] with regard to the manner of proof necessary to set forth a viable action for medical negligence, we need not address whether the clarifying language of 42 U.S.C. 18122(1) should be applied retroactively to this action. Similarly, we need not resolve the parties' conflicting positions regarding the retroactive

---

[11] *See Pettit* at *6 (Holmes, J., dissenting) (where intent of the legislature in enacting a bill was to specifically state that an intervening interpretation of law "was not what it ever intended the law to be," that intervening interpretation "never was the law in this state").

application of R.C. 2317.45(B) and R.C. 2317.44(B), provisions effective March 20, 2019 which, like 42 U.S.C. 18122(1), specify that "42 U.S.C. 1395 et seq. * * * shall not be construed to establish the standard of care or duty of care owed by a health care provider to a patient in a medical claim * * *."

{¶ 44} Stuck's assignment of error is not well taken.

      3.  Remaining arguments

{¶ 45} Pointing to the trial court's statement that Stuck failed to produce expert testimony showing that the occurrence of a "never event" pertains to the applicable standard of care (*see* Doc. #104, p. 6), Stuck claims to have such evidence and faults the trial court for failing to consider his expert witnesses' deposition testimony in opposition to the motions for partial summary judgment. Stuck never directed the trial court to such testimony as a basis for averting summary judgment. Regardless, the existence or non-existence of such expert testimony is irrelevant to Stuck's declaratory judgment request. Stuck's third cause of action sought a declaration that the Medical Defendants would be liable *even absent* proof of a breach or of causation. The trial court did not err by granting summary judgment as to that particular request, without regard to whether Stuck produced expert testimony that may rely on the existence of "never events" to satisfy the traditional elements of medical negligence.

{¶ 46} Finally, while Stuck asserts on appeal that the Medical Defendants' own "never event" policies and procedures "make the issue admissible" (Brief of Appellant Stuck, p. 26), the trial court's partial summary judgment decision did not include a ruling on the admissibility of evidence that Stuck experienced a "never event," the introduction of certain laws or policies, or the use of such evidence by an expert. (*See* Doc. #104). In

refusing to declare as a matter of law that negligence per se, strict liability, or res ipsa loquitur applied to Stuck's medical negligence claim, the trial court's judgment did not address the possible presentation of evidence about "never events" that may have occurred during his hospitalization. The issue of the admissibility of such evidence is not properly before us at this time.

{¶ 47} For the foregoing reasons, the appeal brought on behalf of David Stuck's estate as well as the cross-appeals of Miami Valley Hospital, Premier Health Partners, Travis L. Perry, M.D., Kelli Huesman, P.A., and Comprehensive Burn and Wound Specialists are without merit, and all assignments of error are overruled.

## Conclusion

{¶ 48} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and MYERS, V.J., concur.

Copies sent to:

Dwight D. Brannon
Matthew C. Schultz
Neil F. Freund
Shannon K. Bockelman
Susan Blasik-Miller
Kevin C. Quinlan
John B. Welch
Hartford Life and Accident
Renal Physicians
Dayton Physicians
Hon. Michael W. Krumholtz